## DAUGHERTY v. CITY OF LEXINGTON et al.

Court of Appeals of Kentucky.
March 28, 1952.

As Extended on Denial of Rehearing
June 20, 1952.

Elwood Rosenbaum, Lexington, for appellant.

William H. Townsend, Stoll, Keenon & Park and Foster Ockerman, all of Lexington, for appellees.

CULLEN, Commissioner.

W. S. Daugherty sought a permit from the Board of Adjustment of Fayette County for the erection of a restaurant, filling station and tourist cabin on his property abutting the Richmond Road south of the City of Lexington in Fayette County. The board denied the permit because the proposed methods of water supply and disposal of sanitary waste for the project had not been approved by the Fayette County Health Officer.

Daugherty then brought an action against the board, the county zoning inspector, the county health officer, the fiscal court, the City of Lexington, and the Lexington Water Company. In one paragraph of his petition he sought to have the action of the board of adjustment reversed as if on appeal, and in another paragraph he sought a declaration of rights as to the legality of the zoning resolution which prescribed the requirements for building permits and under which the board of adjustment was established. By an amendment, the petition further sought an injunction restraining the defendants from interfering with the construction of the plaintiff's proposed buildings.

The circuit court sustained a general demurrer to the petition, as amended, and upon the plaintiff declining to plead further the petition was dismissed. On Daugherty's appeal to this Court, the only question is whether the amended petition stated a cause of action.

The substance of the allegations of the petition is that the "Interim Zoning Resolution" adopted by the Fayette Fiscal Court, under which building permits were required, was void because the fiscal court had no authority to adopt zoning regulations, and that, even assuming the resolution to be valid, the action of the health officer and the board of adjustment in refusing to grant Daugherty a building permit was arbitrary, unreasonable and unlawful, and deprived Daugherty of his property without just compensation, because the sole motive and purpose in refusing the permit was to protect the purity of the water in a reservoir owned by the Lexington Water Company, a privately-owned corporation having a franchise to supply water to the City of Lexington.

Concerning the validity of the zoning resolution, a copy of which was attached as an exhibit to the petition, it appears that the resolution was adopted in 1948, as a temporary measure pending the preparation and adoption of a "permanent comprehensive zoning resolution." The resolution applied to the entire county, except areas already subject to the zoning regulations of other authorities. It contained standard zoning provisions, including the establishment of residence districts, prohibitions against commercial or industrial uses in residence districts, requirements for building permits or "zoning certificates" for commercial or industrial structures, etc.

At the time the resolution was adopted, there was no specific statutory authority for general county zoning by a fiscal court. Under KRS 100.320 to 100.490, the fiscal court of a county containing a second-class city had authority to join with the city in establishing zoning regulations for unincorporated territory within the "municipal area" of the city, the "municipal area" being defined by KRS 100.010(6) as meaning "the surrounding territory which bears relation to the planning and zoning of the city." From recitations in the interim zoning resolution, it appears that the Fayette Fiscal Court previously had joined with the City of Lexington in zoning the territory within two miles of the city limits, thus, at least for the immediate purposes, treating such territory as constituting the "municipal area".

In 1950, the General Assembly enacted KRS 67.380, which authorized any fiscal court to adopt and enforce "regulations governing the construction, reconstruction, remodeling, repair and maintenance of buildings" in the county, other than agricultural buildings. This statute became effective on June 15, 1950. The Fayette County interim zoning resolution would have expired by its own terms on July 10, 1950, and on that day the fiscal court adopted a resolution "extending" the interim resolution for an additional period of six months. The application of Daugherty for a building permit, and the denial of his application, occurred during this six-month extended period.

Daugherty contends that the fiscal court had no authority to provide for general county zoning, and the original interim zoning resolution therefore was void; that the void resolution could not be given life by the "extending" resolution of July 1950, but even if it could be, KRS 67.380 merely authorized regulation of building construc-

tion, and did not authorize zoning, and since the zoning provisions of the interim resolution cannot be separated from the building construction provisions, the entire resolution must be held void. Daugherty also contends that the extended resolution expired six months after July 10, 1950, but all of the actions he complains of took place during the six-month period, so we do not see how the expiration can affect this case. In addition, the expiration is not alleged in the petition.

 Under the view we take of the case, it is unnecessary for us to decide whether the original interim zoning resolution was void. It is our opinion that KRS 67.380, in authorizing the regulation of building construction, gave the fiscal court power to regulate from the standpoint of health as well as from the standpoint of safety, see 9 Am.Jur., "Buildings," sec. 3, page 200, and therefore the building permit provisions of the zoning resolution were within the powers granted to the fiscal court by KRS 67.380. We also think that the fiscal court, by extending the original resolution after KRS 67.380 became effective, could validly put in force such portions of the resolution as were within the scope of the powers granted by the statute. The contention that the zoning resolution was inseparable must fail because the resolution itself recites that its provisions are separable, and that if any part or section is held invalid such decision shall not affect or impair the remaining parts of the resolution.

The question of whether the health officer and the board of adjustment, in denying Daugherty's application for a building permit, acted arbitrarily and unreasonably, and with the sole purpose of protecting the private property of the Lexington Water Company, is a difficult one.

It appears, from the exhibits filed with the petition, that Daugherty's land lies some 1100 feet from an artificial lake constituting a reservoir of the Lexington Water Company, and the elevation is between 20 and 30 feet above the water elevation of the lake. The plans submitted by Daugherty to the health officer called for a 1000-gallon septic tank for the restaurant, and a 500-gallon septic tank for the tourist cabin, each tank draining into a separate septic field consisting of drain tile in a crushed rock fill. The health officer refused to approve the sewage disposal plans, "thinking only in terms of public health and safety and the topography of land in the proposed area."

It is Daugherty's contention that his proposed method of sewage disposal is completely adequate, modern and as satisfactory and safe as it is reasonably possible to obtain; that it will cause no health hazard to the public generally; that the proposed use of his property constitutes a reasonable and natural use; and that to prevent him from so using his property, in order to protect the purity of the water in the reservoir lying below his land, amounts to a taking of his property without just compensation, not for the benefit of the public generally, but for the benefit of a private corporation.

In support of his position, he cites cases from other jurisdictions upholding the right of a riparian owner to pasture cattle, Bountiful City v. Deluca, Utah, 292 P. 194, 72 A.L.R. 657; or to use of water for swimming or boating, George v. Village of Chester, 202 N.Y. 398, 95 N.E. 767; or to continue to maintain a lumber camp that existed before the water became a source of public water supply, People v. Elk River Mill & Lumber Co., 107 Cal. 221, 40 P. 531. Throughout these cases, and others cited by appellant, are found the words "reasonable," "natural," "usual," or "ordinary," applied to the use of the property of the upper riparian owner.

Concerning what constitutes a "reasonable" use, the Michigan Supreme Court, in People v. Hulbert, 131 Mich. 156, 170, 91 N.W. 211, 217, 64 L.R.A. 265, said: "No statement can be made as to what is such reasonable use which will, without variation or qualification, apply to the facts of every case. But in determining whether a use is reasonable we must consider what the use is for; its extent, duration, necessity, and its application; the nature and size of the stream, and the several uses to

which it is put; the extent of the injury to the one proprietor and of the benefit to the other; and all other facts which may bear upon the reasonableness of the use."

In the Michigan case it was held that a riparian owner could not be prohibited from bathing in the water of a lake although a city drew its water supply from the lake. However, the court said: "In what we have said we do not mean to intimate that an upper proprietor may convert his property into a summer resort, and invite large numbers of people to his premises for purposes of bathing, and give them the right possessed only by the riparian owner and his family."

In Pontiac Improvement Company v. Board of Com'rs of Cleveland Metropolitan Park Dist., 104 Ohio St. 447, 135 N.E. 635, 640, 23 A.L.R. 866, it is said that health regulations made in the exercise of the police power will be upheld if they do not interfere with the enjoyment of private rights "beyond the necessities of the situation".

Here we have a situation where the owner of property above a lake used as a source of public water supply proposes to convert his property to commercial purposes, inviting the public generally to enjoy the use of his property, for compensation. The owner of the property argues that his right to so use his property is in no way inferior to the right of the private corporation owning the lake to keep the lake free from impurities. His argument is that the corporation will be permitted to profit at his expense if he is prohibited from using his property as proposed.

■ This argument loses sight of the fact that the water company, although a corporation operated for profit, nevertheless is a public utility, and its rates are subject to regulation by the state. KRS 278.200. If the water company is compelled to purchase land adjoining its lake in order to protect the purity of the water, the cost will be reflected directly in the rates charged to the users of the water. The water company is in substance nothing more than a management corporation, allowed to make a reasonable profit for furnishing water to the city.

■ The public has a direct interest in the preservation of the purity of the water in the reservoir of the Lexington Water Company. So Daugherty's right to convert his property to a commercial use must be measured against this public interest in determining the question of reasonableness.

■ He may not use his property in such manner as will endanger the source to which the public must look for its supply of water. The burden was on him to allege and prove that the septic tank disposal system which he proposed to use would not endanger the purity of the water in the reservoir. We note that it is not alleged in Daugherty's pleadings that his disposal system will not endanger the purity of the water. It is merely alleged "that the method of disposal of sanitary waste as outlined on said drawing was completely adequate, modern in every detail and as satisfactory and safe as it is reasonably possible to obtain." It can readily be seen that Daugherty's system might be adequate, modern, and as satisfactory and safe as can reasonably be obtained, but that the use of the system still might endanger the purity of the water in the reservoir.

■ It is tacitly conceded by the appellees, and we think correctly so, that if Daugherty had alleged that the operation of his system would not endanger the purity of the water supply, he would have been entitled to introduce proof on the question of whether the health officer exercised a reasonable discretion in the disapproval of his application. No such allegation having been made in the pleadings, it follows that the demurrer to the petition as amended was properly sustained.

The judgment is affirmed.