AMERICAN SIGN CORPORATION et al., Appellants,

v.

Dan FOWLER et al., Appellees.

Mrs. Anna Mae SCHERER, Appellant,

v.

AMERICAN SIGN CORPORATION et al., Appellees.

Dan E. FOWLER, Judge of Fayette County Court, et al., Appellants,

v.

Anna Mae SCHERER, Appellee.

Court of Appeals of Kentucky.

March 18, 1955.

Weldon Shouse and George E. Barker, Lexington, for American Sign Corp. and others.

Eldon S. Dummit and John B. Breckinridge, Lexington, for Anna Mae Scherer.

Nolan Carter, Lexington, for W. R. McCaw, Jeff Mitchell, Clifford Beatty, A. L. Davidson and O. C. Rash.

Stoll, Keenon & Park, Lexington, for Harry O. Wyse.

Charles Wylie, William E. Sloan, Lexington, for Dan Fowler, W. W. Greathouse III, John H. Kerr, Jr., and R. H. Hardwick, comprising the Fiscal Court of Fayette County.

John R. Cook, Jr., Lexington, and Foster Ockerman, Lexington, for City of Lexington.

CULLEN, Commissioner.

These appeals raise the question of the validity of certain zoning regulations in their application to territory in Fayette County outside the limits of the City of Lexington. The regulations were adopted by joint action of the fiscal court of the county and the board of commissioners of the city, purportedly under KRS 100.320 to 100.490, which govern planning and zoning in cities of the second class and their municipal areas.

The action out of which these appeals arise was instituted by Mrs. Anna Mae Scherer against the City of Lexington and the fiscal court of Fayette County, seeking a declaration concerning the application of the zoning regulations to a parcel

of property upon which Mrs. Scherer proposed to erect a drive-in theater. Several advertising-sign companies intervened in the action, asking a declaration as to the validity of the zoning regulations in so far as they regulated the construction of advertising signs.

The circuit court made the following declarations:

1. The fiscal court had power, under KRS 67.380, to zone all of Fayette County, and the comprehensive zoning ordinance-resolution is valid under that statute.

2. Power does not exist under KRS 100.320 to 100.490 to zone beyond the "municipal area" of Lexington. The "municipal area," as defined in KRS 100.010(6), does not extend farther into the county than the corporate limits of the city might be extended in the foreseeable future. Mrs. Scherer's property, some six miles outside the present city limits, is not within the municipal area of Lexington.

3. The comprehensive zoning ordinance-resolution of the city and county is legal and reasonable in establishing an Amusement-2 classification and in placing limitations and regulations upon certain types of business enterprises in Amusement-2 districts.

4. The action of the fiscal court in refusing to adopt the recommendation of the Planning and Zoning Commission, that Mrs. Scherer's property be reclassified from Agricultural-1 to Amusement-2, was not arbitrary, unreasonable or capricious.

5. It was "illegal" for the fiscal court in the original comprehensive zoning ordinance-resolution to fail to assign any specific territory in the county to the Amusement-2 classification set up by the ordinance-resolution, which covered the operation of drive-in theaters. The Amusement-2 classification itself is valid and reasonable; the only illegality consists of the failure of the fiscal court to allot or designate any territory in this classification.

6. By virtue of the power to zone granted by KRS 67.380, the zoning regulations prohibiting signs in Agricultural-1 areas are valid.

Mrs. Scherer has appealed from the first and fourth declarations. She maintains that KRS 67.380 does not confer power to zone, and failing this, she contends the fiscal court acted arbitrarily, capriciously and unreasonably in refusing to reclassify her property from Agricultural-1 to Amusement-2.

The advertising-sign companies have appealed from the first and sixth declarations. They join with Mrs. Scherer in arguing that KRS 67.380 does not grant power to zone, and they further contend that the zoning regulations are arbitrary and unreasonable as they apply to signs.

The fiscal court has appealed from the second and fifth declarations, contending that the entire area of Fayette County is within the "municipal area" of Lexington, and that the ordinance was not invalid in failing to assign specific territory to the Amusement-2 classification.

The controlling questions are those relating to the extent of the power to zone under KRS 67.380 and KRS 100.320 to 100.490. If the power to zone the territory in question does not exist, the questions as to arbitrary and capricious action are not reached.

We will consider first the question of whether KRS 67.380 is a *zoning* statute.

The statute reads as follows:

"The fiscal court of any county shall have authority, by order or resolution, to adopt, and modify or amend from time to time, and to enforce, regulations governing the construction reconstruction, remodeling, repair and maintenance of buildings, other than buildings for agricultural purposes located upon premises that are used solely for agricultural purposes."

This statute was enacted in 1950, at which time there had been in existence for many years detailed, comprehensive statutes dealing with zoning in cities and in

counties containing a city of the first class. See KRS Chapter 100. So, in order to construe KRS 67.380 as a zoning statute, we would be compelled to believe that the legislature intended, by a simply-worded, short grant of power, to give to counties a broad, unlimited authority to zone whereas the authority of cities in the field of zoning is restricted by detailed limitations and qualifications.

■ The alternative to construing KRS 67.380 as a zoning statute is to construe it as a building code statute. The line of demarcation between these two kinds of statutes is not easy to define. Both rest upon the police power, and both are designed to promote public safety, health and welfare. The dividing line must be found somewhere in the measure of the public interest sought to be protected.

In Daugherty v. City of Lexington, Ky., 249 S.W.2d 755, we said that KRS 67.380 authorizes the regulation of building construction from the standpoint of health as well as safety. However, that statement was made in relation to an attempt to control a specific health hazard, and did not have reference to health in the broad, sociological concept. We think the Daugherty case is authority only for the proposition that KRS 67.380 authorizes the regulation of building construction from the standpoint of public safety and health in a limited or narrow sense, and not in the broad sense of the public good generally.

■ Although the noun "use" does not lend itself to the making of nice distinctions, we think that in one of its meanings it furnishes a basis for distinguishing between a zoning statute and a mere building code statute. Zoning has as one of its main purposes the regulation of the *use* of property. Seligman v. Belknap, 288 Ky. 133, 155 S.W.2d 735. This means regulation of the purpose or object of the use, rather than the mere conditions or circumstances of the use. It is customary for zoning statutes to contain express provisions for the regulation of the use of property, and the absence of any such provision from KRS 67.380 is very persuasive that this statute was not intended to be a zoning statute.

A careful reading of KRS 67.380 discloses that it relates only to the structural aspects of buildings. Our city zoning statutes, on the other hand, cover a wide variety of subjects. For example, KRS 100.350(4), relating to zoning in cities of the second class, states that regulations may be made governing "the height, number of stories and size of buildings and other structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes." In KRS 100.360(3), also relating to cities of the second class, the objects of zoning are stated so as to include lessening congestion in the streets, providing adequate light and air, preventing overcrowding of land, avoiding the undue concentration of population, and facilitating the adequate provision of transportation, water, sewerage, schools, parks, playgrounds and other public requirements. In KRS 100.066 and 100.067, relating to cities of the first class, and in KRS 100.520, relating to cities of the third, fourth, fifth and sixth classes, similar provisions are made concerning the scope and object of zoning.

In the leading case of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303, 54 A.L.R. 1016, the Supreme Court, in discussing the zoning power, said that the question is to be determined, "not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality." Speaking in general terms, we think that KRS 67.380 was not designed to be applied in terms of circumstances and locality.

■ It is our opinion that KRS 67.380 does not authorize county-wide zoning, and the circuit court erred in its declaration on this point.

We now consider the question of the correctness of the declaration of the cir-

cuit court that the "municipal area" of Lexington, beyond which zoning is not authorized under KRS 100.320 to 100.490, includes only such territory as in the foreseeable future might be annexed to the city.

In KRS 100.010(6), "municipal area" is defined to mean "the surrounding territory which bears relation to the planning and zoning of the city." In holding that the area was limited to what in the foreseeable future might be annexed to the city the circuit court relied upon Smeltzer v. Messer, 311 Ky. 692, 225 S.W.2d 96, in which this Court held that a fourth-class city could not zone beyond its corporate limits in another county. While the Smeltzer case is not directly in point, we think the reasoning employed in that case is applicable here. The Court said, in the Smeltzer case, 225 S.W.2d at page 97:

"While it may be said that any municipality has an interest in its approaches, we can find nothing in the statutes which grants the power to control the use of such outlying territory unless it may reasonably be contemplated that such territory will eventually become a part of the city. The future expansion of its territorial limits is a basic consideration the legislature apparently had in mind when enacting the planning and zoning statutes. Since appellees' land cannot be absorbed under annexation proceedings by the City of Erlanger, its use is not so reasonably related to the city's development as to fall within the purposes shown by the statutes."

It is argued on behalf of the fiscal court that the question of what territory bears relation to the planning and zoning of the city is a question of *fact,* and the planning and zoning commission having determined as a fact that all of Fayette County bears relation to the planning and zoning of the City of Lexington, this finding cannot be disturbed in the absence of clear *evidence* to the contrary.

We can agree that the question of what territory bears relation to the planning and zoning of the city is one of fact, *once it has been determined as a matter of law what is meant by the phrase* "bears relation to the planning and zoning of the city." The difficulty with the fiscal court's argument is that the terms of the zoning ordinance-resolution, and the testimony of the witnesses who sought to uphold the ordinance-resolution, show beyond doubt that the question of county-wide zoning was being approached, not from the standpoint of relation to the *planning and zoning* of the city, but from the standpoint of the *economic, commercial and social interests* of the city.

It is our opinion that the phrase "bears relation to the planning and zoning of the city" means just what it says—that the territory must bear relation to the *planning and zoning* of the city; in other words, the territory must be so situated as to have a bearing on the planning and zoning scheme *for the city.* A remote, abstract relation to the economic, commercial or social interests of the city is not enough.

It is our opinion that the circuit court's declaration on the question of "municipal area" is correct.

While there may be some incidental questions as to the application of the zoning regulations to advertising signs *within* the municipal area of Lexington, those questions are beyond the scope of the issues in the main action in which the sign companies were permitted to intervene, and therefore we think it is not appropriate that such incidental questions be determined.

On the appeals of Mrs. Scherer and the advertising-sign companies, the judgment is reversed, with directions to enter judgment in conformity with this opinion. On the appeal of the fiscal court, the judgment is affirmed.

A motion was made to dissolve an injunction issued by the circuit court, which maintained the status quo pending the appeal. The injunction will be dissolved when the mandate issues on this opinion.