## BENNING W. SANBORN *vs.* THE TOWN OF DEERFIELD.

Where a town is indebted to several individuals, and the debts are due, and of such a character that they should be paid, the town is liable to a selectman, who discharges them in behalf of the town.

If part of them are due to one selectman, and he pays the residue to the other creditors, and receives a negotiable note from the two remaining selectmen to the amount of all the debts, which note one of the two afterwards pays, that one may recover the amount from the town in an action in his own name alone.

Selectmen are general agents for towns, in respect to pecuniary matters, and unless restrained by a special vote are warranted in paying any existing debts of the town, which are of a character requiring immediate payment.

THIS was assumpsit for money paid and expended.

At the trial here, February term, 1819, it was agreed by the parties that *Benj. Sanborn, Thomas Burbank* and the plaintiff, were the selectmen of Deerfield for the year 1817. That *Thomas Burbank* had a claim against said town for certain services, and also for certain debts, partly contracted that year and partly the year before, which he had paid in behalf of the town : that the plaintiff and *Benj. Sanborn*, as selectmen of Deerfield, executed a promissory negotiable note to said *Burbank* for the amount of his claim, which note being afterwards negotiated and sued, the promissors notified the town of the fact ; but, no defence being made, judgment was recovered against them in their private capacity, and the whole amount of it paid by the present

plaintiff; and that a verdict should be taken for the plaintiff, for the amount of claims which *Burbank* paid, and which were due from the town, including his own demand, subject to the opinion of the court on the above facts.

After evidence in support of those claims, a verdict was taken for their amount, under the agreement above stated.

*Hoar* and *Mason*, for the defendants.

*Cutts* and *Smith*, for the plaintiff.

WOODBURY, J. The decision of this cause depends on the extent of those general powers, which are by law entrusted to selectmen.

The only statute, defining those powers, was passed February 8th, 1791(1); and it provides, that " selectmen shall have the ordering and managing of all the prudential affairs" of their respective towns.

The nature of town corporations is such, that many of their acts must be performed by agents. The members cannot with convenience often assemble; and as the economy of towns, in respect to their various interests, requires constant superintendence, it became proper for the legislature to appoint general agents over all their " prudential affairs."

Pecuniary matters, as well as other subjects of internal police, may well be embraced under a strict definition of the word " prudential." Such subjects demand the most constant attention; and the deep interest they excite in all would require that the agency over them should be permanent, and be vested in persons of intelligence, of character, and responsibility.

Selectmen are presumed to be such persons, because towns are forbidden to fill that office with any, but men " able and discreet, of good conversation, and freeholders inhabiting in such town."(2)

They are chosen, too, by a voluntary selection of the towns themselves; and as the towns who chose them are most concerned in their conduct, it ought not to be expected, that the welfare of these corporations will often be jeopardized, by being placed, by their own choice and deliberation, in ignorant or unfaithful hands.

(1) 1 N. H.
Laws 240.

(2) 1 N. H.
Laws 240.

Again, selectmen act under an official oath ; and for gross neglect of duty, or for misfeazance, they are doubtless, in their individual capacity, answerable to the corporation.

With these checks and securities, we can foresee no evil from an enlarged construction of the general agency of selectmen, in respect to the pecuniary transactions of their respective towns.

It is probable, that under such impressions, the legislature, in the statute before cited,(1) proceeded to empower them to officiate as treasurer, when no treasurer is " particularly chosen."

(1) 1 N. H. Laws 240.

But it does not follow, that, because " the ordering and managing of all the prudential affairs" of towns is confided to them, there is no limit to their power.

The towns themselves, in their corporate capacity, can alone transact some pecuniary business ; in respect to some other, the towns can, by special votes, impose restraints on their general agents ; and the very nature of this general agency, and of the affairs to be managed, must also confine selectmen to such acts or business as belong to the agency, as are necessary to the discharge of its duties, and as, in the exercise of a sound discretion, would be proper.

In the present case, it is not relevant to examine and specify all those acts. It suffices that, in our opinion, the act done by the plaintiff, in paying existing debts of the town, was one of them.

The true state of the case is this. He was a selectman of Deerfield. The town was indebted to divers creditors. He has in fact advanced money to discharge their claims ; and his having done this by means of *Burbank*, one of his brethren, does not alter the gist of the transaction from what it would have been, had the plaintiff employed some other third person, to whom he afterwards gave a note for what was advanced, and subsequently paid that note. Though the note was secured by the signature of the third selectman, yet the plaintiff alone paid it ; and consequently he alone having advanced money in behalf of the town, which

Sanborn
*vs.*
Deerfield.

remains unpaid, is alone entitled to sue for it. 1 *Chitt. Pl.* 6, 8.—1 *Saund.* 153–4, *note.*—1 *East* 497, 226.—3 *B. & P.* 235.—2 *D. & E.* 282.—5 *Es. Ca.* 193.—8 *Mass. Rep.* 462.

Were this transaction so viewed as to make the note valid, and the signers sureties for the town, the consequence would still be, that when one of two sureties for a third person has paid the debt, he alone may prosecute for indemnity. But when the whole business is regarded as a payment by the plaintiff, through *Burbank,* on behalf of the town ; (and such is its real nature, if we consider that *Burbank's* acts were adopted by the plaintiff, and the money paid to his endorsee by the plaintiff alone) it becomes useless to decide, whether selectmen are or are not ex officio empowered to bind their respective towns by negotiable notes, or by any other express promise in writing. There would not seem to be much necessity for an extension of their authority to negotiable notes, and there certainly would be some

(1) 5 Taunt. 792, Stark vs. Arch. Company.*

danger attending its exercise.(1) Yet, whatever might be our opinion, when the question arises, this case may be deemed the mere payment by one selectman, with the approbation of his brethren, of debts then justly due from the town, and which, for aught that appears, should, in the exercise of a sound discretion, have at that time been paid. The present action is only to recover what he has thus paid out and expended in behalf of the town. The corporate interests can in no way be jeopardized by holding that the action lies. Because the justness of the debts and the propriety of their payment at the time are both subjects of examination in this suit ; and if, on inquiry, they were not due, or their payment should have been delayed in consequence of their peculiar character, or of specific instructions from the town, the selectman, who pays them, would go beyond the spirit of his general agency concerning pecuniary matters ; and, therefore, as he would then perform only a voluntary courtesy, he must depend on the voluntary liberality of the town for remuneration.

* 3 Barn. & Ald. 1, Broughton vs. Salford Water Works.

We are better satisfied with this conclusion, because it accords with prevailing usages throughout the state, and neither violates any statute, nor opens any door to abuses or injustice.

*Judgment on the verdict.*