## CARLTON *v.* BATH.

| 22 | 559 |
| 72 | 271 |

In an action against a town for damages occasioned by the obstructions, insufficiency, or want of repairs in a highway, the question whether a party exercises ordinary care and prudence, in passing or attempting to pass over the highway, is a question of fact for the determination of the jury, under the instructions of the Court as to the law.

Selectmen have not, by their general power to manage the prudential affairs of a town, authority to release, without consideration, a cause of action in favor of the town.

They have not, by such general power, authority to release a witness who is liable over to the town in case of judgment recovered against the town. Such authority should be given by vote of the town.

Where a town was prosecuted for damages occasioned by the obstructions, insufficiency and want of repairs in a road, and, by statute, the surveyor of the district where the injury happened, was liable over to the town for such damages as might be recovered against the town: *held*, that the selectmen could not, by their general power, release the surveyor so as to make him a competent witness in the case; that there must be a vote of the town granting the power before such a release could be legally executed.

CASE, to recover damages occasioned to the plaintiff on the 3d of April, 1849, by reason of the obstructions, insufficiency, and want of repairs of a certain highway in such town. The writ was dated August 1st, 1849.

It was admitted that the town were bound to keep the highway in repair and free from obstructions, where the injury happened.

It appeared that in the month of February, 1849, a portion of the highway near Bath Village became icy, and the town put at one end of the icy place, which was several rods long, some brush and poles, to prevent the public travel from passing that way ; and at the other end of the icy place they put a log, which extended from a bank on the left hand side of the road across the left hand rut nearly to the right hand rut, as the road was generally travelled, and then placed a large thick plank, extending from said log across the rest of the road to a pile of stones upon the bank at the right hand side of the road. The public travel was turned, by these obstructions, through a mill-yard. These obstructions remained, and no travel passed over the road till the latter part of March, about a week before the injury to the plain-

tiff. The ice then becoming melted and soft, public travel, more or less, passed over the road. The brush and poles at the one end were trodden down or thrown away, and the plank at the other end was shoved back upon the log and extended a very little beyond it into the road, so little as to be scarcely noticeable. The log however was not moved, and the travel passed by the end of the log and plank. At the time of the accident the plaintiff was walking his horse and had nearly passed the log and plank, when his hind wheel was caught by the plank, his wagon thrown over, and he himself considerably injured, the plank being so large and fixed at the other end as not to yield to the force of the wagon. The space between the end of the log and the pile of stones was about ten feet, and was within the laid out highway. A part of the ten feet had been wrought for public travel, and travelled previously to the time the obstructions were placed across the road, but the greater part had not been wrought. The log and plank when shoved together were so large that they could not be travelled over.

The court among other things instructed the jury, that if they found the road or obstructions to be such that a man, exercising ordinary care and prudence, would not attempt to pass, then the plaintiff could not recover. But if they found that the road or obstructions, were not of that character, and that men exercising ordinary care and prudence would attempt to pass, and that the plaintiff, in doing what he did, had used all ordinary prudence and care, then he could recover. To these instructions of the court the defendants excepted.

In the course of the trial, the town offered Hiram Elliott as a witness, who, it appeared, was surveyor of the highway at the time the accident happened. He was objected to as incompetent on account of his liability over to the town. The selectmen of the town then executed a release of all claim upon him ; but it appearing that there had been no action of the town in regard to the matter, and that the selectmen had no authority to execute the release unless it was by virtue of their general authority as selectmen, the court ruled the release insufficient and excluded the witness ; to which ruling the defendants excepted.

The jury having returned a verdict for the plaintiff, the defendants moved to set the same aside and for a new trial, for supposed error in the instructions and rulings of the court; and the questions were transferred to this Court for determination.

*C. R. Morrison*, with whom was *Hibbard*, for the defendants. The obstruction was open, visible, and known to the plaintiff. He was aware that it was placed there by the authorities of the town, to prevent travel over a road suddenly become dangerous from an unexpected cause. If the necessity for it had ceased, yet the plaintiff, with full knowledge of it, had no right to attempt to pass around it at the risk of the town. *Farnum* v. *Concord*, 2 N. H. Rep. 392; *Tisdale & wife* v. *Norton*, 8 Met. Rep. 392; *Bosworth* v. *Swanzey*, 10 Met. Rep. 365; *May* v. *Princeton*, 11 Met. Rep. 444; *Noyes* v. *Morristown*, 1 Vermont Rep. 353; *Briggs* v. *Guilford*, 8 Vermont Rep. 264.

2d. Selectmen are required by statute to manage all the prudential affairs of the town. This grant is sufficiently comprehensive to include the authority to release the witness. It can be done without carrying the terms of the statute beyond their proper import.

Selectmen may discharge claims, and may make towns liable. They may legally bind the town by note. By the same authority they may also release causes of action. *Andover* v. *Grafton*, 7 N. H. Rep. 298; *Pike* v. *Middleton*, 12 N. H. Rep. 278; *Dennett* v. *Nevers et al.* 7 Greenl. Rep. 399; *Augusta* v. *Leadbetter*, 16 Maine Rep. 45. Selectmen may also waive the legal rights of a town. *Hanover* v. *Eaton*, 3 N. H. Rep. 38; *Gorrill* v. *Whittier*, 3 N. H. Rep. 265. The right to attain the end presupposes that they have the power to carry it out; to accomplish it.

They have power to appear and defend suits in the absence of express authority to that effect. May they not discharge a witness by the same authority? It is a question of discretion which they have the right to exercise. We do not contend that they can make all kinds of contracts and waive all kinds of rights; but they may do any thing coming within their prudential

Carlton *v.* Bath.

powers. We would also refer the Court to *Sanborn* v. *Deerfield,* 2 N. H. Rep. 251 ; *Hanover* v. *Weare,* 2 N. H. Rep. 131 ; *Embden* v. *Augusta,* 12 Mass. Rep. 307 ; *Shutesbury* v. *Oxford,* 16 Mass. Rep. 102.

*Bellows,* with whom was *Carlton,* for the plaintiff. Whether the obstruction was such that a person in the exercise of ordinary care and prudence would not attempt to pass, was properly left to the jury. It stands upon the same ground as the question whether he exercised due care and prudence in passing it. If the passage could not have been attempted prudently, then, as a matter of law, it was done at the plaintiff's own risk. But whether it could be done prudently or not, is a question purely of fact. We apprehend that it has never been settled, as a matter of law, that the attempt to pass round a log that extended partly across the road was imprudent. The fact that it was placed there by the town, makes no difference ; at least none in favor of the town, inasmuch as the occasion for it had passed away, and it was gross negligence to allow it to remain.

The finding of the jury, that the attempt to pass was not imprudent, is well sustained by all the facts in the case, and, so far as reported, there is nothing tending in the slightest degree to a different result.

2d. The ruling of the court, in excluding Elliott as a witness, was correct. The question really is, whether the selectmen have power to bind the town by deed. Selectmen, in the management of the prudential affairs of the town, may do what is necessary ; nothing more. *Sanborn* v. *Deerfield,* 2 N. H. Rep. 251 ; *Pike* v. *Middleton,* 12 N. H. Rep. 278. Their authority is limited, and so is the doctrine of the cases. They have not the power to settle controversies. *Horn* v. *Whittier,* 6 N. H. Rep. 94 ; *Leavenworth* v. *Kingsbury,* 2 Day's Rep. 323 ; *Angel* v. *Pownal,* 3 Vermont Rep. 461 ; *Middlebury et al.* v. *Rood,* 7 Vermont Rep. 125.

It is against the policy of the law to allow surveyors to be released, or to permit the selectmen to do it. This is in fact the highway surveyor's case. But independent of the general prin-

ciple, the manner in which a release is executed should be considered. A release is a deed ; a sealed instrument, which selectmen cannot execute without a vote of the town.

EASTMAN, J. It does not appear to us that there can be any doubt as to the first question presented in this case. It was admitted on the trial, that the town were bound to keep the road in repair where the injury happened ; that at the place where the plaintiff was thrown from his wagon, was a road legally established. Such being the fact, the defendants were bound to keep the road free from obstructions and in a passable state. Whereever towns are liable to an indictment for want of repairs in a highway, they are answerable to the traveller for an injury sustained, when no fault appears on his part. *Howard* v. *North Bridgewater*, 16 Pick. Rep. 189 ; *Bliss* v. *Deerfield*, 13 Pick. Rep. 102 ; *Drury* v. *Worcester*, 21 Pick. Rep. 44. The ice and obstructions in this road appear to have remained for more than a month, and nothing was done on the part of the town to render the road suitable for public travel. They were unquestionably liable to indictment for this neglect, and were also liable for injuries sustained by travellers if there was no fault on their part. A traveller cannot throw himself upon an obstruction and recover for the damage sustained ; neither can he recklessly undertake to pass over a road or across a stream which are visibly and palpably impassable. If so, it is his own folly, and he can sustain no action for damages which he may receive. He is bound to exercise ordinary care and prudence ; and the obstruction or want of repairs in the road must be the proximate cause of the injury, not his carelessness or recklessness. But whether the traveller has used ordinary care and prudence, or whether the road is out of repair, or whether the damages were occasioned by the insufficiency of the highway, or by the fault of the plaintiff, are questions of fact to be passed upon by the jury, under the instructions of the court as to the law. *Green* v. *Danby*, 12 Vermont Rep. 338 ; *Barret* v. *Vaughan*, 6 Vermont Rep. 243 ; *Thompson* v. *Bridgewater*, 7 Pick. Rep. 188 ; *Lane* v. *Crombie et al.* 12 Pick. Rep. 177.

The authorities cited by the defendants, do not militate with this statement of the rule. *Farnum* v. *Concord*, is not in conflict with it. *Tisdale & wife* v. *Norton*, was where the plaintiffs turned out of the road on account of its being impassable, and met with an accident, four rods *beyond* the limits of the highway. *Bosworth* v. *Swanzey*, was an action brought for damages incurred by a defect in the highway when the plaintiff was travelling on the Sabbath, and it was held that in order to sustain the action the plaintiff must show that he was travelling from necessity or charity. The cases from the eleventh of Metcalf, and the first and eighth of Vermont, are to the point that it is necessary for the plaintiff to show that there has been no fault on his part, and that the injury was occasioned by the defect in the road.

The second question presented is one of more difficulty. By the Rev. Stat., chap. 34, § 2, it is provided, that selectmen shall manage all the prudential affairs of the town, and shall perform all the duties by law prescribed; and it is contended that, under this general provision, the selectmen of Bath had the power to release the witness, Elliott, from all liability over to the town. At the time of the accident, Elliott was the surveyor of the district where the injury was received. In case the plaintiff recovered of the town, Elliott became liable to the town for the damage. "The town shall have a remedy over against any surveyor of highways through whose fault or neglect the said damage happened." Rev. Stat. chap. 57, § 2. In order to make him a competent witness, it was necessary that he should be released; and the court ruled that this could not be done by virtue of the general powers of the selectmen, but that there must be a vote of the town to that effect. Was the ruling correct? Have selectmen, by virtue of their statutory power to manage the prudential affairs of a town, the right to release, without consideration, by an instrument under seal, all claim of the town upon a highway surveyor, for any amount that the town may be obliged to pay, by reason of his neglect to keep in repair the highway?

It is not an easy matter to enumerate with precision the various duties embraced within the meaning of the phrase "prudential affairs." Mr. Justice *Gilchrist*, in *Pike* v. *Middleton*, 12 N.

Carlton *v.* Bath.

H. Rep. 278, well remarks, that it is much easier to say whether a certain matter belongs to the prudential affairs of the town, than to give a comprehensive definition of the phrase, without enumerating the particular duties which are included within it. The first time we find the subject discussed in the reports of this State, was in *Hanover* v. *Weare*, 2 N. H. Rep. 131. In that case an agreement was made by the selectmen, before action brought, to waive the statutory notice required in case of supplies furnished a pauper. The court held that such an agreement did not preclude the town from objecting at the trial that legal notice had not been given. The point was decided upon the ground that it was an agreement made out of court, and not binding in the action until made a matter of record; that even if the town had by vote made the agreement, the only remedy would be by action upon it for damages. In the argument of the case, the position was taken that the selectmen had no authority to bind the town by such an agreement, without a vote of the town. But in giving the opinion, *Woodbury*, J., said, that it was unnecessary to settle that point. The case next to be found, is that of *Sanborn* v. *Deerfield*, 2 N. H. Rep. 251. In that case the town were indebted to sundry individuals, and the debts were due. The selectmen paid the debts and brought their action for money paid; and the court held that it could be recovered. This decision went to the extent that selectmen are the general agents of towns in respect to pecuniary matters, and are authorized to pay existing debts which are of a character to require immediate payment. In the course of the opinion it was said, that it does not follow because the ordering and managing of all the prudential affairs of towns is confided to the selectmen; that there is no limit to their power; that the towns themselves in their corporate capacity can alone transact some pecuniary business. Other remarks of a similar character were also made. In *Hanover* v. *Eaton et als.*, 3 N. H. Rep. 38, it was held that selectmen might bind the town not to take any advantage of defects in a notice, given by another town, that a pauper had been relieved. This decision was made upon the ground that the selectmen were, by statute, the overseers of the poor, and as such,

Carlton *v.* Bath.

a waiver of notice might be made by them. In *Gorrill* v. *Whittier*, 3 N. H. Rep. 265, it was decided that selectmen, under the act requiring them to perambulate town lines, have the power to agree where the lines are ; but have not the power to change the lines. In *Andover* v. *Grafton*, 7 N. H. Rep. 298, the court held that selectmen may bind the town by note given for the support of a pauper, legally chargeable upon the town. The decision proceeded upon the ground that the town was liable to pay the demand for the support, and it was their duty to pay it, if they had funds, and if not they might give a note and save costs. But in delivering the opinion, Chief Justice *Parker* commences by laying down the proposition, that, " selectmen have not a general authority to bind their town by note, or any other contract. Their authority is limited, and they bind the town only when acting within the scope of it." *Pike* v. *Middleton*, 12 N. H. Rep. 278, arose upon a bond given by Pike as collector of the town, in which was a clause that all suits where the validity of the taxes was contested, should be defended by the town, and the costs be paid by them. Pike had been sued by one Cloutman for collecting a tax against him, and had been defeated, and this suit was instituted, on the bond, to recover the amount paid. The Court held that the selectmen, in causing the collection of the taxes, might enter into such an agreement with the collector ; that it was incident to their power to appoint a collector and to see that the taxes are collected.

We have stated briefly the decision of the Court in the several cases in this State, cited by the defendants, for the purpose of seeing whether any of them go to the extent claimed in this case. The decisions are all placed upon the ground that the selectmen have the power to manage the general matters out of which the particular cases grew ; and the Court, when delivering some of their opinions, appear to think it proper to guard their decisions by observations tending to curtail rather than extend the powers of selectmen. The authorities, cited by the defendants, from other States, do not go any farther, if so far, as those of our own.

But we are not disposed to question the accuracy of any of

the defendant's authorities, for it is quite clear to us that none of them go to the extent of the doctrine contended for in this case. And there are authorities which appear to bear decidedly against it. In *Horn* v. *Whittier*, 6 N. H. Rep. 94, an action was brought upon a bond given by a collector to the selectmen, for the faithful performance of his duties as collector; and one of the selectmen undertook to release the action. The Court held that the release was without effect; that the plaintiffs were trustees of the town; and that no one of the selectmen could release the action without an authority from the town for whose benefit the bond was taken. One only, of the selectmen, made the release; but the language and decision of the Court does not imply that the objection related to the fact that the act was done by one only, but that it required the authority of a vote of the town to release the cause of action.

It has been held that overseers of the poor have no authority *virtute officii*, to interfere with the property of a pauper, and no authority to submit a claim of a pauper to arbitration. *Furbush* v. *Hall*, 8 Greenl. Rep. 315. So, also, that selectmen of a town are not authorized by virtue of their office merely, to make a settlement of the claims of the town. *Leavenworth* v. *Kingsbury*, 2 Day's Rep. 323. Neither have they power to submit to arbitrament a question regarding the settlement of a pauper which involves the rights or liability of the town. *Griswold* v. *North Stonington*, 5 Conn. Rep. 367. In *Angel* v. *Pownal*, 3 Vermont Rep. 461, it was held that " the selectmen of a town cannot, without a vote of the town for that purpose, discharge the interest of a witness so as to render him competent." And, further, that it could not be done by an agent appointed to defend the suit, by virtue of his general powers as agent. The suit was against the town for the default of a constable. In case of judgment against the town, they had a remedy over against the constable and his sureties. The selectmen on the trial released the constable as a witness, without a vote of the town. This was excepted to; and the Court in deciding the point say, that to discharge the witness would be the bartering away a sure cause of action against the constable and his bail,

for the chance of getting rid of the present suit; and that this is not among the prudential affairs of a town to which the statute refers. And that when a writing is executed by the selectmen, not purporting to be a receipt for the full sum due, but purporting, for some valuable consideration, to discharge a debt, it is not binding unless their power to execute such a discharge, can be found in some statute, or some vote of the town. That the town might authorize such a measure by a vote at some meeting legally warned for that purpose.

The last case cited is much in point. The witness in that case was liable over to the town, in the same manner as the witness here is liable over. The release of Elliott was not a formal matter, but one affecting substantially the interests of the town. It was the relinquishment, without consideration, of a liability created by statute, and over which the selectmen had not, by virtue of their general powers, any control. It was bartering away the certain claim upon the surveyor, for the uncertain chance of success in the suit pending. For such an act there was no pressing necessity; and the power to do it can fall but little, if any, short of that to execute a deed. The opinion of the Court is, that there must be

*Judgment on the verdict.*