Strafford,
No. 4912.

ROCHESTER *v.* ALBERT E. BARCOMB *& a.*

Argued March 7, 1961.

Decided April 4, 1961.

*Fred W. Hall, Jr.,* city solicitor (by brief and orally), for the plaintiff.

*Beamis & Davis (Mr. Davis* orally), for the defendants.

BLANDIN, J. I. Counsel for the defendants states in his brief that they "are not attacking the validity of the ordinance on procedural grounds, but are attacking it on substantive grounds." The essence of their claim on this phase of the matter is that the ordinance bore no relationship to the public interest and welfare nor did it contain a comprehensive zoning plan for the community, which are essential to the validity of the enactment. *Kimball* v. *Blanchard,* 90 N. H. 298; 36 B. U. Law Rev. 354, 393-396.

To establish their position the defendants rely substantially on the statement made by councilor Michael at the April 5, 1960 meeting of the mayor and council when he recommended certain changes in the ordinance as proposed by the planning board. The effects of the changes were to fix the boundary between the residential and business zone on Union Street along the area of its intersection with Wakefield Street so that the defendants' property would come wholly within a residence zone, rather than being partly in this zone and partly in a business district, which was where it would have been located under the planning board's proposal. Although the statement made by the councilor as set forth in the agreed statement of facts contains references as to the necessity of "growth and progress" and acting in "the best interest of the city," it cannot be denied that it also appears to advocate consideration for the welfare of an individual who lived in the vicinity of the defendants' property where the proposed supermarket was to be built and who was opposed to its erection.

On the other hand, another councilor, about a month later, at the May 3 meeting, urged that the public interest would be better served by the amendment, as it would preserve this area as a residential zone. Among other things, he stated: "The corner of Union and Wakefield Streets is no place for a market of any type. This will create a traffic hazard and there is ample room outside to build a shopping center. This is a choice piece of property and should not be commercialized."

It is conceded by the defendants that improper motives on the part of a member of the board, if they may be said to have existed, are not a basis in themselves for invalidating the ordinance.

*Coleman* v. *School District,* 87 N. H. 465, 471. However, they argue that such motives "show light on the failure of the council to adopt a comprehensive plan or to arbitrarily discriminate against an individual, depriving him of his constitutional rights or to show that the ordinance, rather than being in the public interest or welfare is contrary to the interests of the public and its welfare." *Coleman* v. *School District, supra.*

The issue resolves itself into whether on the record before us, in the light of all the circumstances, the ordinance is clearly "unreasonable or unlawful." *Gelinas* v. *Portsmouth,* 97 N. H. 248; RSA 31:78. It appears that northerly from its junction with Union Street, Wakefield Street had always been in an extensive residential area containing many large homes and bounded on the north by an agricultural zone. As previously stated, this was the situation when the defendants bought their property. It is a well-known fact that in many cities there is today a strong tendency toward moving large shopping centers outside the compact part, when suitable space exists to do so, for the purpose of lessening the traffic and fire hazard, relieving congestion, and in general adding to the safety, convenience and attractiveness of the location. Such were the considerations, as previously stated, stressed by a proponent of the disputed amendment before it was passed at the meeting on May 3, 1960.

It is too firmly established to require extended citation that the presumption favors the validity of municipal ordinances which are not lightly to be overturned. *Rockingham Hotel Co.* v. *North Hampton,* 101 N. H. 441, 444. It was not necessarily arbitrary or unreasonable for the city to preserve the area here involved as residential. See *Rockingham Hotel Co.* v. *North Hampton, supra,* 444. The fact that in this process certain individuals were protected is not decisive against the legality of the action. *Edgewood Civic Club* v. *Blaisdell,* 95 N. H. 244, 246.

Viewing the entire record — including the zoning maps — we cannot say that the ordinance clearly lacks a comprehensive plan, ignores the welfare of the community or is unduly discriminatory against any particular individual. *Cf. Kimball* v. *Blanchard,* 90 N. H. 298. In these circumstances, we hold that the defendants have failed to sustain their burden of showing that the legislation is unreasonable or unlawful and it must therefore be held valid. *Gelinas* v. *Portsmouth,* 97 N. H. 248.

II. We turn now to the defendants' alternative contention that

even though the ordinance be upheld, it cannot apply to their property because at the time of its adoption they had acquired a vested right to proceed with the construction of a supermarket. To sustain their claim, they argue that since the 1947 ordinance had been declared invalid by the Superior Court on March 8, 1960, and the new ordinance, with amendments, had not been enacted, they needed no permit. They say also that they have spent money for legal services in connection with this dispute and that on May 2, 1960, the day before the passage of the ordinance, they started construction. This, according to the agreed statement of facts, "consisted of removing loam from the building site and erecting batter boards on the premises." The validity of the March 16 permit given to the defendants was expressly conditioned on whether the Superior Court's decision of March 8 would be upheld on appeal. Of this they admittedly were fully aware. The appeal was dismissed without prejudice on June 7, 1960, after the passage of the ordinance now involved. The defendants also knew when they commenced work on May 2 that amendments to the ordinance as proposed by the planning board would undoubtedly be offered at the regular meeting to be held the next day and that these amendments would place all their property in a residential zone.

The test to determine whether a vested right is obtained in such a situation is laid down in *Winn* v. *Corporation*, 100 N. H. 280, 281, where we stated: "It seems to us that the better view and the one more likely to produce justice is that where the owner, *relying in good faith* upon a permit and before it has been revoked, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, the permit may not be cancelled." (Emphasis supplied). In *Brady* v. *Keene,* 90 N. H. 99, quoted approvingly in the *Winn* case, the plaintiff, relying upon an amendment to an existing ordinance, had in good faith removed some shrubbery and cut down a few trees preparatory to erecting a filling station. He had also entered into negotiations for a lease relating to the same property. The ordinance was then further changed so that the land was rezoned as residential, and he was denied permission to go ahead with the erection of the filling station. The court there said that in its opinion the plaintiff "had not done enough in relation to his property" to obtain a vested right to continue with the forbidden use. *Id.,* 101. It further stated that his expenses "in relation to the cost of erecting and equipping a filling station . . . were clearly insignificant." *Id.,* 102.

By the same token, applying these principles to the present case, it appears to us that the defendants' expenditures, in proportion to the ultimate cost of a supermarket, are not of great significance, nor could they have relied implicitly upon the conditional permit. It is apparent that they have not met the requirements necessary to gain a vested right, and their claim to such must be rejected.

III. The defendant's final contention is that since the ordinance did not specifically revoke the conditional permit issued to them on March 16 to construct a supermarket, it must be held that no revocation was effected. We do not believe this contention requires extended consideration. The defendants cite no supporting authority, and while the question has not been squarely raised before in similar cases here (see *Winn* v. *Corporation, supra; Brady* v. *Keene, supra*), it seems to have been assumed that no specific revocation of an outstanding permit is required in order that an ordinance may become applicable to property which falls within its scope. No necessity for detailed reference in such legislation to existing permits appears to exist. Furthermore, in the present case the record makes it abundantly clear that there was no thought of specifically exempting the defendants from the operation of the enactment.

In conclusion, we cannot say that the ordinance is invalid upon any of the grounds urged by the defendants or that it does not apply to their property. The result reached renders unnecessary consideration of other questions, and the order is

*Temporary injunction made permanent.*

KENISON, C. J., dissented as to part I; the others concurred.