Cheshire,
No. 5055.

JAFFREY *v.* MICHAEL A. HEFFERNAN *& a.*

Argued June 6, 1962.

Decided July 16, 1962.

*William D. Tribble* (by brief and orally), for the town of Jaffrey.

*Maurice M. Blodgett* (by brief and orally), for Michael A., John Timothy and David Wright Heffernan.

*Kenneth A. Brighton* for *amici curiae.*

BLANDIN, J. The main issue raised by the pleadings is whether the ordinance in question is valid. The parties have agreed upon the following material facts:

"3. That the Town of Jaffrey at its annual Town Meeting held on March 8th, 1960, pursuant to a warrant duly published, enacted the following ordinance:

"Every dwelling house, residence or accessory building hereafter erected in the town shall have a minimum set back of thirty feet from any public highway.

"4. By a deed dated May 19, 1961 and recorded in the Cheshire County Registry of Deeds in Volume 682, page 370, the respondents acquired title as tenants in common in a certain parcel of land situated on Gilsum Road and adjacent to Thorndike Pond in the Town of Jaffrey. That said Gilsum Road is a public highway within the meaning of the ordinance.

"5. That on or after November 1st, 1961 the respondents caused to be erected, or at least permitted to be erected, on said parcel of land a dwelling house. That said dwelling house is

set back fourteen feet or less from said Gilsum Road, or in any event, is set back less than thirty feet.

"6. That on or about the fourteenth day of November 1961 the respondents were notified by registered mail by counsel for the town that said dwelling house was within thirty feet of said Gilsum Road in violation of the ordinance, and that despite said notice, the respondents have failed and refused to remove said dwelling house, which is still situated at a point less than thirty feet from said highway.

"7. That upon receipt of said notice the respondents suspended work upon the construction of the said dwelling house and that no further work thereon has since been prosecuted.

"8. That the petitioner, Town of Jaffrey, has not appointed a Zoning Commission, except as follows:

"Prior to the adoption of the ordinance quoted in Paragraph 3 hereof, the Town had created a Planning Board, which Board was duly appointed and has since been in continuous existence.

"9. That prior to March 13, 1962, the petitioner, Town of Jaffrey, had not provided for the appointment of a Board of Adjustment and had not adopted regulations and restrictions under the terms of RSA 31:66, except as follows:

"At a Special Town Meeting, held May 18, 1960, at Union Hall, the following Airport Zoning Regulations for the Town of Jaffrey were approved for regulating and restricting the height of structures and objects of natural growth, and otherwise regulating the use of property in the vicinity of Silver Ranch Airport by creating airport approach zones and other restricted areas and establishing the boundaries thereof.

"Section 11. Board of Appeals. There shall be a Board of Appeals consisting of five members, each of whom shall be appointed by the Board of Selectmen for a term of three years and one of whom shall be designated as chairman. The members of said Board of Appeals shall be removable for cause by the Board of Selectmen upon written charges and after public hearing. The Board of Appeals shall have the following powers:

"a. To hear and decide appeals from any order, requirement, decision or determination made by the administrative agency in the enforcement of these regulations.

"b. To hear and decide all applications for variances under section 7 of these regulations.

"c. To exercise the powers and perform the duties of the Board

of Adjustment as set forth in R.S.A. 31:68-86 as presently in force or as amended in the future.

"The Board of Appeals required by the airport regulations has not been appointed.

"10. That the petitioner, Town of Jaffrey, prior to March 13, 1962, had made no provisions for the manner in which said ordinance should be enforced and amended under the provisions of RSA 31:63."

While it is true that the votes of town meetings are liberally construed to accomplish their purpose (*Amey* v. *Pittsburgh School District*, 95 N. H. 386, 388), it is nevertheless necessary that they be expressed within the limits of the powers granted by the State, since towns possess only such powers. *State* v. *Jenkins*, 102 N. H. 545; *State* v. *Paille*, 90 N. H. 347.

The power of a town to adopt zoning regulations is limited to that delegated to it by the Legislature in RSA 31:60-89, and RSA ch. 424, which relates to airport zoning ordinances only. To be valid, a zoning ordinance must comply with the statute in its enactment and its regulations, including the provisions for its administration. It appears that the method of enactment of the ordinance before us, by vote of a town meeting complied with RSA 31:63 and is therefore not open to objection.

Whether other requirements of ch. 31 were fulfilled raises a more difficult question. RSA 31:65 provides that the legislative body of a town "shall appoint a zoning commission, to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold public hearings thereon before submitting its final report, and such legislative body shall not hold its public hearings or take action until it has received the final report of such commission."

Section 66, *Id.*, adds a further requirement that "such local legislative body shall provide for the appointment of a board of adjustment, and in regulations and restrictions adopted pursuant to the authority hereof shall provide that the said board may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained."

No zoning commission under section 65 was ever appointed, although the town had created a planning board under RSA 36:2,

which was in operation prior to the enactment of the disputed ordinance. It does not appear, however, that the board had evolved any "master plan" as contemplated by RSA 36:13. It should be noted that a master plan is of importance, and increasingly so; it should not be overlooked. 68 Harv. L. Rev. 1154.

Furthermore, the town had never provided for a board of adjustment as required by RSA 31:66, although it had at a special town meeting, on May 18, 1960, approved airport zoning regulations under RSA 424:5 (supp). This chapter requires that the town appoint a board of appeals (s. 7 III). This board has the same duties and powers with respect to airport zoning regulations as the board of adjustment under RSA 31:68-86. Although the town voted to establish such a board, under s. 7 III, it has never appointed one.

Counsel for *amici curiae*, supporting the town's position, concedes that "There is no doubt but what a board of adjustment is required by N. H. laws RSA 31:66." However, both he and counsel for the town argue that the enactment of the airport zoning ordinance under RSA ch. 424 and the vote to establish a board of appeals pursuant to s. 7 III, *Id.*, should be deemed sufficient compliance with RSA 31:66, even though no members of such a board have ever been appointed.

We cannot agree with this position. The airport zoning law was passed in 1941 (Laws 1941, c. 145), some sixteen years after enactment of the original zoning enabling act (Laws 1925, c. 92), upon which RSA 31:60-89 is founded. The purpose of the airport zoning law was to guard against particular hazards (RSA 424:2) which had not become apparent in 1925 and which required special treatment. Though there is some overlapping between the two acts (see RSA 31:60; RSA 424:5 II), they are actually separate and distinct, passed at different times and designed to meet different problems and needs. We do not believe that, even though there had been full compliance with RSA ch. 424, including the appointment of a board to hear appeals from airport zoning regulations, this could serve as a substitute for compliance with RSA ch. 31. Neither counsel for the town nor counsel for *amici curiae* has cited any authority for such a claim, nor are we aware of any.

The board of adjustment, under RSA 31:66-72, exercises broad and, we believe, vital functions granted it by the enabling act. Its creation has been held authoritatively to be essential to the

validity of a zoning ordinance. *Somers* v. *Bradley Beach*, 155 N.J.L. 135; *Duffcon Concrete Products, Inc.* v. *Borough of Cresskill*, 1 N. J. 509; 1 Metzenbaum, The Law of Zoning, 2d *ed.* (1955), ch. IX-c, *pp.* 679-680, 1962 Supp. *p.* 63; 1 Yokley, Zoning Law and Practice, 2d *ed., s.* 59; see *Florentine* v. *Darien*, 142 Conn. 415.

In this state, as bearing upon the necessity of such a board, we have decided that any alleged errors by the zoning commission or building inspector must be passed upon by the zoning board of adjustment before any appeal can be taken to the Superior Court. *Carrick* v. *Langtry*, 99 N. H. 251, 254; *Bois* v. *Manchester*, 104 N. H. 5.

In short, we hold that the board of adjustment is an essential cog in the entire scheme of a zoning ordinance, and that lacking it, the ordinance before us is invalid as a zoning ordinance.

Counsel for the town argues in the alternative that this is not a zoning ordinance, but a setback regulation under the general police power and that such has been held valid in this state. This is true. *Sundeen* v. *Rogers*, 83 N. H. 253, 258. See also Yokley, Zoning Law and Practice, 2d *ed., s.* 164. So considered the agreed facts furnish no basis for holding that it was not a proper exercise of the general police power of the town. *Gorieb* v. *Fox*, 274 U. S. 603; see *Sundeen* v. *Rogers, supra*, 257. On the record before us the petition should be granted.

*Remanded.*

All concurred.