Belknap,
No. 6029.

Nelson B. Piper, Jr., & a.

*v.*

Meredith.

June 5, 1970.

*Wescott, Millham & Dyer* ( *Mr. Peter V. Millham* orally ), for the plaintiffs.

*Upton, Sanders & Upton* ( *Mr. Richard F. Upton* orally ), for the defendant.

*Nighswander, Lord, Martin & KillKelley* ( *Mr. David J. Kill-Kelley* orally ), for Charles J. Cataldo *& a.,* as amicus curiae.

LAMPRON, J. Petition for a declaratory judgment under RSA 491:22 brought against the town of Meredith by Nelson B. Piper, Jr., Nelmy Leasing, Inc., and PI Enterprises, Inc., as property owners and taxpayers, seeking a determination that a town ordinance regulating building heights is void, unconstitutional, without force of law, and inapplicable to plaintiffs.

The matter was heard by a Master ( Jack B. Middleton, Esq. ) who viewed the premises. The master made certain findings and rulings and recommended that the ordinance in question be declared invalid and without force of law. The master's report was approved by *Johnson,* J. who entered a decree in accordance with the recommendation. The objections of the parties to the master's report were overruled and their exceptions thereto and defendant's exception to the court's decree were reserved and transferred.

On September 6, 1968, the plaintiff, Nelmy Leasing, Inc., purchased from Meredith Yacht Club, Inc., for the sum of $ 160,000, a tract of land and buildings located on the shore of Lake Winnipesaukee in Meredith Bay. On the same day it leased the premises for a term of 99 years to plaintiff, PI Enterprises, Inc., to erect thereon eight nine-story condominium towers, now changed to five nine-story towers containing a total of 85 condominium units. Both plaintiff corporations are wholly owned by plaintiff Nelson B. Piper, Jr. and his associate, Myles L. Israel.

On September 23, 1968, more than 100 qualified voters of

Meredith petitioned the Selectmen in writing to call a special meeting to act upon the following proposed town ordinance:

"In pursuance of authority conferred by RSA 31:60, and for the purpose of promoting the health, safety and general welfare of the community, and to secure safety from fires, panic and other dangers, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population and to facilitate the adequate provision of water, sewerage and other public requirements, it is hereby enacted, that

"No buildings shall be erected in the Town of Meredith exceeding five stories or seventy-five feet in height; and no building shall be erected within fifty feet of any other building or within one hundred feet of the shore of any lake in Meredith, exceeding three stories or forty-five feet in height."

On the next day, September 24, 1968, the Selectmen called the special meeting requested in the petition for October 9, 1968 and duly posted and published the required warrant. RSA Ch. 39.

On October 4, 1968, plaintiffs filed in superior court a petition for injunction praying that the town be temporarily enjoined from holding the proposed town meeting and permanently enjoined from holding any future town meeting to act on the proposed ordinance until all necessary statutory prerequisites of a zoning ordinance had been met. The Trial Court ( *Loughlin, J.* ) refused a temporary injunction but ruled "that any action taken by the petitionee [town] is violative of the requirements of Chapter 31, Sections 60-66 and is not valid under the general police power." On appeal this court held on March 20, 1969, that the above ruling constituted an advisory opinion which is not within the jurisdiction of the superior court. *Piper* v. *Meredith,* 109 N.H. 328, 330, 251 A.2d 328, 329.

The master found that "On October 9, 1968, the Special Town Meeting was held. Town counsel, Judge John Ramsey, attempted to explain to the citizens what had transpired with regard to the Petition for Injunction and attempted to answer questions posed by those present at the meeting. There is a dispute between the parties as to the action eventually taken at the meeting. The Plaintiffs say that the only action taken . . . was an expression of opinion. The Defendant claims that there was an overwhelming vote [209-35] in favor of the article set out in the Warrant . . . ."

On October 10, 1968, plaintiff Piper obtained from the Town Clerk a document purporting to be a copy of the minutes of the above meeting. It refers to the action taken as an expression of opinion. On or about October 21 next, the Town Clerk under-took to revise the minutes to set forth a vote on the warrant article in question. The master ruled that defendant's motion to amend the records in accordance with the revision should not be granted.

On April 15, 1969, another special town meeting was held for the purpose of ratifying the action taken at the October 9, 1968 meeting. The article in the warrant to that effect was adopt-ed by the voters, With respect to both the October 9, 1968 and the April 15, 1969 meetings, it is undisputed that the prerequi-sites for the adoption of a zoning ordinance were not met. RSA 31:63-a (supp) provides, among other requirements, that in the enactment of a zoning ordinance "there shall be at least two public hearings at least fifteen days apart" with a notice of the time and place published in a paper of general circulation in the town.

The master ruled "that the ordinance in question constitutes a 'zoning regulation' which may be enacted only pursuant to the provisions of RSA 31:63-a as amended . . . . Since the pre-requisites of publication and public hearings were not met at either the meeting of October 9, 1968 or at the meeting of April 15, 1969, the master rules that the ordinance is invalid and unenforceable." The superior court entered a decree accordingly.

Although the town admits that the requirements for the adoption of a zoning ordinance (RSA 31:63-a (supp)) were not met, it maintains, however, that these requirements do not apply to an ordinance adopted by the town in the exercise of its police powers (RSA 31:39) and that the master erroneously applied them to the present ordinance.

The governmental authority known as the police power is an inherent attribute of state sovereignty, *Peirce* v. *New Hampshire,* 5 How (U.S.) 554, 582 (1847); 16 Am. Jur. 2d Constitutional Law *ss.* 259, 260. The police power is broad and "includes such varied interests as public health, safety, morals, comfort, the protection of prosperity, and the general welfare." *Corning Glass Works* v. *Max Dichter Co.,* 102 N.H. 505, 509, 161 A.2d 569, 573. "[I]f it is to serve its purpose . . . it must be of a flexible and expanding nature to protect the public against new dangers

and to promote the general welfare by different methods than those formerly employed. " and may include measures intended to promote the attractiveness of roadside scenery. *Opinion of the Justices,* 103 N.H. 268, 270, 169 A.2d 762, 764; *Blevens* v. *Manchester,* 103 N.H. 284, 289, 170 A.2d 121, 124; 6 McQuillin, Municipal Corporations *s.* 24.03 ( 1969 rev. vol. ).

"It is a long established principle under our law that towns are but subdivisions of the State and have only the powers the State grants to them. " *Exeter* v. *Kenick,* 104 N.H. 168, 170, 181 A.2d 638, 640; *Bisson* v. *Milford,* 109 N.H. 287, 288, 249 A.2d 688, 689. It follows that towns have such powers as are expressly granted to them by the legislature and such as are necessarily implied or incidental thereto. *State* v. *Zetterberg,* 109 N.H. 126, 129, 244 A.2d 188, 191; 37 Am. Jur. Municipal Corporations *s.* 277; 3A Antieau, Independent Local Government Entities *s.* 30A-05. *See Watertown* v. *Meseberg,* 144 N.W.2d 42, 44 ( S. D. 1966 ). These granted powers must be interpreted and construed in the light of the police powers of the state which grants them. *Haselton* v. *Stage Lines,* 82 N.H. 327, 330, 133 A. 451, 452; *State* v. *Jenkins,* 102 N.H. 545, 546, 162 A.2d 613, 614; *Frizzell* v. *Charlestown,* 107 N.H. 286, 288, 220 A.2d 742, 744.

This court has held that towns are empowered under the authority granted by RSA 31:39 to make bylaws for a variety of purposes which generally fall into the category of health, welfare and public safety. *State* v. *Zetterberg, supra.* Setback ordinances, as well as ordinances regulating space between buildings and imposing limits on the height of buildings have been held generally to come within this police power of towns. 6 McQuillin, Municipal Corporations *ss.* 24.541,-.542,-.546,-.547. In *Jaffrey* v. *Heffernan,* 104 N.H. 249, 183 A.2d 246, this court held that an ordinance requiring buildings to have a minimum setback of 30 feet from any public highway could be legally adopted under the general police power of towns. This court also held in *Deering* v. *Tibbetts,* 105 N.H. 481, 202 A.2d 232, that a town ordinance prohibiting "the erection of any building or trailer within 1/4 mile of the Town Common, unless [the] Selectmen shall have approved in advance the plans for the construction and location of such building or trailer in order that the atmosphere of the Town of Deering may be maintained" was a valid exercise of the police power granted the town by RSA 31:39.

It was further stated that the "fact that aesthetic considerations . . . were also factors motivating the enactment is not fatal." *Deering* v. *Tibbetts, supra* at 484; 6 McQuillin, Municipal Corporations *ss.* 24.16, 24.33 (1969 rev. vol.). In so holding, this court stated that the promotion of the general economy, welfare, and prosperity of the town, and the value of privately-owned properties within it was a generally recognized basis for the exercise of the police power. RSA 31:39 confers upon towns not only the power to make bylaws "for the protection, preservation and use of the public . . . parks, commons, . . . and other public institutions" (*Deering* v. *Tibbetts, supra*), but also "for making and ordering their prudential affairs." The latter provision is of ancient origin. While not defined by our decided cases, the breadth of the authority conferred thereby is evident from the context in which the provision was used in predecessor statutes, dating back in our sister state of Massachusetts to as early as 1692. *See Willard* v. *Newburyport,* 12 Pickering 227, 231. In our own statutes, the language appeared at least as early as 1719, when towns were empowered "to make and agree upon Such necessary Rules, orders and By Laws for the Directing Managing and ordering the Prudential affairs of Such Town as they Shall Judge most conducing to the Peace, Welfare, interest & good order of the Town And the Inhabitants thereof." 2 Laws of New Hampshire 340, 341-42. The language was carried forward in a statute of the first constitutional period, enacted in February 1791. 5 Laws of New Hampshire 587, 591-92.

Plaintiffs, arguing against the validity of the Meredith ordinance as a valid exercise of the town's authority under RSA 31:39, point out that the objects and purposes of the present ordinance are found among the many purposes for which towns have been empowered to enact a zoning ordinance. RSA 31:60. They also correctly point to the fact that reference was made to the enabling law of zoning in the preamble to the present ordinance when it first was proposed for adoption at the town meeting of October 9, 1968. However, this same preamble also contained language consonant with the police powers granted to towns under RSA 31:39. Furthermore the purposes stated in the preamble, although entitled to weight, are not determinative of the type or constitutionality of the ordinance. *Opinion of the Justices,* 103 N.H. 268, 269, 169 A.2d 762, 763; 50 Am. Jur. Statutes *s.* 309. *See People* v. *Hempstead Bank,* 304 N.Y.S.2d 276. Nor are the motives

of the legislative body determinative of the validity of the ordinance. *Stone* v. *Cray,* 89 N.H. 483, 489, 200 A. 517, 522; *Chicago National Bank* v. *City of Chicago Heights,* 14 Ill. 2d 135, 150 N.E.2d 827; *See* Annot., 71 A.L.R.2d 568.

Whether of not a particular law is a zoning measure subject to the prerequisites for the enactment of such an ordinance ( RSA 31:63-a ( supp ) ) or is an expression of some other phase of the police power, not so subject, is to be determined by the nature and purpose of the particular enactment. 8 McQuillin, Municipal Corporations *s.* 25.10 ( 1965 rev. vol. ). *See American Sign Corporation* v. *Fowler,* 276 S.W.2d 651 ( Ky. Ct. App. 1955 ). This determination is to be made on a consideration of the special facts of the specific ordinance. *Stone* v. *Cray, supra* at 485.

The ordinance in question provides for an overall height limitation on buildings in the town of five stories or seventy-five feet in height. It further limits the height to three stories or forty-five feet if the building is within fifty feet of another building or one hundred feet of the shore of any lake. The town adverts to the fact that Meredith Bay of Lake Winnipesaukee is a public body of water owned by the public at large and widely used for recreation and boating. *State* v. *Stafford Company,* 99 N.H. 92, 97, 105 A.2d 569, 572; RSA 271:20. It argues that the preservation of its shore line from unrestricted exploitation, despoliation and excessive concentration of population, intended by the ordinance, falls within the general scope of the protection of " parks, commons and other public institutions of the town " for which it is granted specific powers by RSA 31:39. *State* v. *Zetterberg,* 109 N.H. 126, 224 A.2d 188; *Deering* v. *Tibbetts,* 105 N.H. 481, 484, 202 A.2d 232, 235.

The town also points out that Meredith is an area of great natural beauty whose normal population of about 2800 expands to between 12,000 to 15,000 in the summer season. It maintains that " The congestion of summer population in high-rise buildings quite close to the limited amount of undeveloped shore lines of New Hampshire lakes presents obvious problems affecting the public health, safety and welfare " the regulation of which comes within the powers granted under RSA 31:39. *State* v. *Jenkins,* 102 N.H. 545, 546, 162 A.2d 613, 614; 7 McQuillin, Municipal Corporations *s.* 24.547 ( 1968 rev. vol. ).

The town further maintains that aesthetics or the appearance of a community which this ordinance seeks to preserve is also

a proper consideration, at least among others, if not alone, to justify the exercise of its police power under RSA 31:39. *Deering v. Tibbetts,* 105 N.H. 481, 484, 485, 202 A.2d 232, 235; 6 Mc-Quillin, Municipal Corporations *s.* 24.15 ( 1969 rev. vol. ). *See* Annot., 21 A.L.R.3d 1222.

Under familiar principles of law, the presumptions favor the validity of the ordinance and the burden of establishing its un-constitutionality is on the plaintiffs. *State* v. *Grant,* 107 N.H. 1, 3, 216 A.2d 790, 791; *Rochester* v. *Barcomb,* 103 N.H. 247, 253, 169 A.2d 281, 285. If any fair reason can be given for in-cluding it within the scope of the police powers granted under RSA 31:39 it must be upheld. *Corning Glass Works* v. *Dichter Co.,* 102 N.H. 505, 509, 510, 161 A.2d 569, 573. Plaintiffs have made no claim of any defect with respect to the procedure necessary to adopt it under that section and the master properly held that any ambiguity as to whether or not it was adopted at the town meeting of October 9, 1968 was cured at the meeting of April 15, 1969. *Plainfield* v. *Hood,* 108 N.H. 502, 240 A.2d 60.

We hold that the ordinance in this case is in the category of the ordinances in the *Heffernan* and *Deering* cases. The first regulating the setback of buildings from a public highway. The latter regulating the construction and location of buildings in a certain area of town. It differs from the ordinance in *Bisson* v. *Milford,* 109 N.H. 287, 249 A.2d 688, declared to be a zoning ordinance. The primary purpose of the latter was found to be to restrict the use in three areas of the town to single and two family residential buildings with " comprehensive regulations "to effectuate this purpose.

We hold further that the Meredith ordinance comes within the police. powers granted to the town by RSA 31:39 to protect its public institutions and to promote the general economy, welfare and prosperity of the town. *Deering* v. *Tibbetts,* 105 N.H. 481, 202 A.2d 232. *See Plainfield* v. *Hood,* 108 N.H. 502, 506, 240 A.2d 60, 64. We sustain the town's exception to the decree of the superior court, adopting the recommendation of the master, declaring the ordinance invalid and without force of law.

If the town could adopt the ordinance without observing the notice and requirements of RSA 31:63-a ( supp ), as we are holding, the master found and ruled that the ordinance was effective as of April 15, 1969 and applies to plaintiffs' project

unless it had progressed to the point that their interests in it had vested. The master properly found and ruled that prior to October 9, 1968, the date of the first town meeting, the town had no ordinance, rules or regulations which would have prevented plaintiff PI Enterprises from proceeding with its project. The master also properly found and ruled that the project as originally planned, or as presently modified, will be in violation of the provisions of the ordinance.

The master found that during the period from June 1, 1968 to October 1, 1968, the plaintiffs expended approximately $40,000 on the project for borings, surveys, a rendition of the proposed buildings, preliminary plans, land clearing, overhead, administration and sales expenses. During the period from October 1, 1968 to May 1, 1969 the master found that according to plaintiffs' evidence they had expended an additional $100,000, exclusive of the original land acquisition, for a total of approximately $140,000, against the total cost of the project estimated to be $1,700,000 exclusive of land acquisition and engineering.

This court has adopted the rule, which prevails in many other jurisdictions, that an owner, who, relying in good faith on the absence of any regulation which would prohibit his proposed project, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, acquires a vested right to complete his project in spite of the subsequent adoption of an ordinance prohibiting the same. *Winn* v. *Corporation,* 100 N.H. 280, 281, 124 A.2d 211, 213; *Bosse* v. *Portsmouth,* 107 N.H. 523, 532, 226 A.2d 99, 105; 8 McQuillin, Municipal Corporations *s.* 25.157 ( 1965 rev. vol. ).

In determining whether plaintiffs had acquired such a vested right, the master properly excluded the acquisition price of the land and its lessened value for uses other than that intended by the plaintiffs. Money spent for the purchase of land does not change its use nor create a right to use it for an intended, but not executed, use when restrictions are imposed. It is, rather, the amount of money spent on improvements to change the use of the land in a tangible way which if substantial enough and done in good faith will create a vested right which cannot be affected by the enactment of a restrictive ordinance. *City of Rutland* v. *Keiffer,* 124 Vt. 357, 365, 205 A.2d 400, 405. 8A McQuillin, Municipal Corporations *s.* 25.181 ( supp ).

In this case a petition for a special meeting to adopt the present

ordinance was filed with the Selectmen on September 23, 1968. Plaintiffs filed a petition to enjoin a town meeting thereon on October 4 and a ruling was made October 8. The meeting was held October 9 at which time a majority of those present either expressed an opinion or voted in favor of the ordinance, which created a controversy about the minutes of this meeting. The master could properly find and rule that plaintiffs knew at least by October 28, 1968, about a contention that the ordinance had been adopted at the meeting of October 9th. Prior to October 28 plaintiffs had expended about $28,000. These factors were sufficient to support the master's finding and ruling that the plaintiffs took a "calculated risk" in proceeding with the project, that is, that they were not relying in good faith on the non-adoption of the ordinance. *Bosse* v. *Portsmouth, supra* at 532; *City of Tucson* v. *Arizona Mortuary,* 34 Ariz. 495, 272 P. 923; 8 McQuillin, Municipal Corporations *s.* 25.157 ( 1965 rev. vol. ); 2 Rathkopf, Law of Zoning and Planning 57-26.

As to the effect of plaintiffs' expenditures, each case presents a question of fact peculiar to its own set of circumstances. The ultimate objective is fairness both to the public and to the individual property owners. *Tremarco Corporation* v. *Garzio,* 32 N.J. 448, 457, 161 A.2d 241, 245. Under all the circumstances of this case, we hold that the master could properly find and rule that, as of April 15, 1969, when the ordinance was ratified, the plaintiffs had acquired no vested rights to continue the project except in accordance with the restrictions imposed by the ordinance. *Winn* v. *Corporation,* 100 N.H. 280, 124 A.2d 211; *Rochester* v. *Barcomb,* 103 N.H. 247, 169 A.2d 281; *Bosse* v. *Portsmouth,* 107 N.H. 523, 532, 226 A.2d 99, 107.

In view of the result reached it is unnecessary to consider other issues raised by the parties.

*Decree vacated and plaintiffs'*
*exceptions overruled. Judgment*
*for defendant.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting:* Although the police power of the *State* may be "broad," "flexible" and "expanding" the police power of towns is confined to that which has been granted by statute.

The rule of construction favoring the validity of statutes does not apply to town ordinances. The existence of authority must be found in the statutes by normal rules of statutory construction and we are not called upon to uphold an ordinance "if it possibly may be" or "by a rule stretching a statute to a strained meaning." *State* v. *Paille,* 90 N.H. 347, 352, 9 A.2d 663, 666.

The legislature under its police power has provided in RSA 31:60-89 authority for the enactment of an ordinance such as this, and the preamble of this ordinance states that it was enacted pursuant to that authority. The ordinance also cites the same purposes as are set forth in section 62.

It is my view that these sections ( 60-89 ) provide the exclusive source of power for the enactment of ordinances to "regulate and restrict the height, number of stories and size of buildings . . . the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population and the location of buildings . . . ." *s.* 60. The ordinance in question here seeks directly or indirectly to do all these things. It is clearly a zoning ordinance. Although an ordinance may be a zoning ordinance without creating zones ( *Plainfield* v. *Hood,* 108 N.H. 502, 240 A.2d 60 ) this ordinance even does that, for the areas surrounding lakes are treated differently from the rest of the town. The power under sections 60-89 must be exercised in accordance with the statute both in the enactment and administration of the ordinance, otherwise it is invalid. *Bisson* v. *Milford,* 109 N.H. 287, 249 A.2d 688.

It is undisputed that those conditions have not been met and that the ordinance cannot be upheld under this grant of power. The court, however, concludes that the legislature having granted this power upon conditions contained in sections 60-89 intended to allow the town to do the same thing under section 39 without meeting those conditions, even though section 39 contains not a single word relating to building restrictions. Because of the specificity of section 39 it cannot be assumed to confer powers not enumerated or referred to. *Adie* v. *Temple Mt. Ski Area,* 108 N.H. 480, 483, 238 A.2d 738, 741.

The court seeks to uphold the ordinance as a means of "protection, preservation and use of the public cemeteries, parks, commons, libraries and other public institutions of the town" ( *s.* 39 ) as in *Deering* v. *Tibbetts,* 105 N.H. 481, 202 A.2d 232 where a town common was actually involved. Lake Winnipe-

saukee, however, is not a public institution of the town. The title lies in the State in trust for the public. *Hartford* v. *Gilmanton,* 101 N.H. 424, 146 A.2d 851; *State* v. *Stafford Company,* 99 N.H. 92, 97, 105 A.2d 569, 572.

The court also relies on the phrase "for making and ordering their prudential affairs." *s.* 39. The "management" of the "prudential affairs" of towns is vested in the Selectmen by RSA 41:8. Although the authority of the Selectmen in "managing" is more restrictive than that of the town in "making and ordering," the term "prudential affairs" obviously relates to the same type of town business. It is true that the term "prudential affairs" has never been precisely defined but a reading of the cases relating thereto discloses that it refers to matters of a pecuniary nature and the ordinary business affairs of the town requiring the exercise of discretion and prudence. Nowhere in any of the cases relating to the term is there any indication whatever that it includes the power to enact ordinances such as is here involved. *See Sanborn* v. *Deerfield,* 2 N.H. 251; *Underhill* v. *Gibson,* 2 N.H. 352, 355; *Pike* v. *Littleton,* 12 N.H. 278, 282; *Carlton* v. *Bath,* 22 N.H. 559; *Rich* v. *Errol,* 51 N.H. 350, 354-57; *Sumner* v. *Dalton,* 58 N.H. 295, 297; *New London* v. *Davis,* 73 N.H. 72, 59 A. 369; *Moulton* v. *Beals,* 98 N.H. 461, 102 A.2d 489; *deRochemont* v. *Holden,* 99 N.H. 80, 105 A.2d 43.

*Jaffrey* v. *Heffernan,* 104 N.H. 249, 183 A.2d 246, also relied on by the court, was, in my opinion, wrongly decided. The whole opinion except for the final paragraph is well reasoned and supports my view that the ordinance here involved is invalid. The final paragraph, however, is entirely inconsistent with the rest of the opinion and relies upon the "general police power," which of course rests only in the State unless conferred expressly by statute on the political subdivision. Section 39 is not even mentioned. The only case cited for the holding of the final paragraph is *Sundeen* v. *Rogers,* 83 N.H. 253, 141 A.142. But that case involved an ordinance enacted under the authority of the predecessors of sections 60-89. The police power referred to in *Sundeen* was the State's police power and that case is not authority for the proposition that a town has any general police power of its own apart from what has been specifically granted by the State. Even accepting the validity of *Heffernan* with respect to the simple setback regulation (which I do not) it is by no means authority for upholding the sweeping restrictions of the Meredith

ordinance which deals with things specifically governed by sections 60-89. *Bisson* v. *Milford, supra.*

I stand with the two trial justices and the master, all of whom have taken the position that this ordinance is invalid.

I also disagree with the court's ruling that the plaintiffs had gained no vested rights prior to the enactment of the ordinance. To get the full picture of the conditions under which plaintiffs acted it should be stated that prior to their purchase of the land in question the town had voted against proposed zoning ordinances. Such ordinances were also voted down at the March town meetings in both 1969 and 1970. Plaintiffs, I think, had every reason to expect that they could proceed with their plans right up to April 15, 1969 the time this ordinance was actually enacted. By this time they had expended about $140,000 exclusive of the $160,000 they had paid for the land which they purchased specifically for this project. The master found that they had spent $40,000 prior to October 1, 1968, an additional $5,000 prior to October 9, 1968, and had acted in good faith up to that date. There is evidence that the land is worth only about $85,000 if it cannot be used for the purpose for which it was purchased. Under the circumstances of this case this diminution in value of the land should be considered in determining whether plaintiffs have incurred substantial liabilities. *Yocum* v. *Power,* 398 Pa. 223, 157 A.2d 368; *Tremarco Corp.* v. *Garzio,* 32 N.J. 448, 161 A.2d 241. These sums certainly seem substantial to me and I don't think that when incurred liabilities reach the amounts here involved that they should be judged by comparison to the ultimate cost.

In considering the question of "good faith" we should not lose sight of the master's reference to the fact that this ordinance was aimed specifically at the plaintiffs and their project. It is in fact "special legislation directly aimed at this particular piece of property." *Yocum* v. *Power, supra.* I would hold that the plaintiffs had gained vested rights and that the ordinance, even if valid, does not apply to this project.