Hillsborough
No. 79-096

RICHARD DEARBORN, & a.

v.

TOWN OF MILFORD, & a.

February 14, 1980

*Brown & Nixon*, of Manchester (*David W. Hess* orally), for the plaintiffs.

*Enright, Lizotte & Drescher*, of Milford (*Patrick J. Enright* orally), for the defendants.

DOUGLAS, J.  The question in this case is whether the plaintiffs have a right to a permit to build a mobile home park on certain land in Milford. We hold that they do.

The plaintiffs, Richard Dearborn and Pennryn Fitts, submitted a plan for a mobile home park to the Milford Board of Selectmen on November 14, 1977. The submission comported in all respects to what seems reasonably to be required by article III, section 3-10 of the Milford Zoning Ordinance: it was in writing, it named the applicants, it contained a letter evidencing an option to purchase the subject land, and the plan was made by an engineer. The plaintiffs also tendered a ten-dollar check as required by section 3-11.

Although section 3-10 requires that applications for mobile home park permits be made to the selectmen, and although the selectmen are designated as the authority for the issuance of a permit, the selectmen refused to accept or consider the plaintiffs' application. Instead they referred it to the town planning board. On November 21, 1977, the plaintiffs submitted their plan to the planning board. It appears that on December 7, 1977, a group of Milford citizens presented to the planning board a petition asking that action on the plaintiffs' application be postponed. The board met on December 28, 1977, and determined that it would not act on the plan because it had no proof that the plaintiffs owned or had an option on the land in question. The board wrote to Audley Corporation, the owner of the land, requesting proof of the plaintiff's option, on January 3, 1978. It received the proof on February 13, 1978. The plaintiffs' attorney wrote to the planning board on January 9, 1978, and again on February 6, 1978, requesting a hearing. On February 13, 1978, the plaintiffs submitted a revised plan to the planning board. The board did not respond until March 28, 1978, when the board's secretary wrote the plaintiffs advising them that "[d]ue to Zoning Regulation up-dating of lot sizes voted on at Town Meeting on March 14, 1978, changing lot size from 10,000 to 15,000 square feet, it will be necessary for you to up-date your plans to meet these changes." The plaintiffs then brought the petition that gave rise to this appeal.

After a trial, the Master (*Robert F. Griffith*, J.) recommended that the court "enjoin the selectmen from denying a permit to the plaintiffs based upon the new lot size requirements of the amended ordinance of March 14, 1978." The Superior Court (*Loughlin*, J.) approved the

master's report and entered the recommended decree. The court subsequently granted the town's motion to stay the injunction pending appeal. Motions to set aside the verdict and for a hearing on the master's report were denied. All questions of law were reserved and transferred to this court.

The major issue in this case is whether the plaintiffs' request for a mobile home park permit was actually a request for subdivision approval. If it was, as the town contends, then the selectmen properly referred the application to the planning board. If not, as the plaintiffs contend, the board of selectmen itself should have acted on the application within a reasonable time. We resolve the question in favor of the plaintiffs.

The town's argument that the plaintiffs were in reality proposing a subdivision is based on an August 1977 change in our legislature's definition of "subdivision," RSA 36:1 VIII (Supp. 1977). The change added the words "rent, lease, condominium conveyance" to the following sentence: "'Subdivision' means the division of the lot, tract, or parcel of land into 2 or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale, rent, lease, condominium conveyance or building development." *Id.* The town argues that because the State legislature's definition of "subdivision" now includes lots rented in mobile home parks, the selectmen properly referred the plaintiffs' application to the planning board. We have no difficulty with the town's premise; a mobile home park plan is generally a proposed division of land for the purpose of renting the parts. *See generally* 2 R. ANDERSON, AMERICAN LAW OF ZONING § 14.03 (2d ed. 1977). However, we reject the town's conclusion.

Cities and towns have only such powers as the State grants them. *City of Portsmouth v. John T. Clark & Son, Inc.,* 117 N.H. 797, 378 A.2d 1383 (1977). Milford, therefore, has only the power to regulate subdivisions that is granted under the relevant enabling statutes, RSA 36:2, :19. We have held that a town, in exercising its powers to regulate, may not expand upon the legislative definition of "subdivision." *Chiplin Enterprises, Inc. v. Town of Lebanon* (decided this day); *Town of Tuftonboro v. Lakeside Colony, Inc.,* 119 N.H. 445, 403 A.2d 410 (1979). Certainly a town may, through adoption of an ordinance, choose to exercise less power than that granted by the State legislature.

At the time of the plaintiffs' original application, and at all times since, the town of Milford's ordinance has defined "subdivision" as "the division of a tract or parcel of land into two or more lots for the purpose ... of sale or building developments. ..." There is no reference

to renting or leasing. This definition, the parties seem to agree, does not contemplate mobile home parks. The town argues, however, that it is not bound by its own definition and that the State's definition governs this case. In support of this position, the town points to section 5:3 of its subdivision regulations, which reads as follows:

> In any case where a provision of this Ordinance is found to be in conflict with a provision of any other Ordinance, regulation, code or covenant in effect in the Town of Milford the provision which is the more restrictive shall prevail.

This language, the town seems to contend, was intended automatically to give effect to any expansion of town regulatory power that might subsequently be granted by revision of the State enabling law. We ascribe to this clause no such meaning. We read the phrase "Ordinance, regulation, code or covenant in effect in the Town of Milford" to comprehend only laws that are within the powers of Milford's citizens to pass or abolish. If the phrase included *State* law, and if Milford's ordinance happened to be more restrictive than the State law, section 5:3 would stand as a declaration that Milford's powers to regulate subdivisions are greater than those granted by the enabling statute. Clearly such a reading would be inconsistent with our holding in *Town of Tuftonboro v. Lakeside Colony, Inc. supra,* and with the general principle that a town's power to regulate subdivisions comes from the State. *City of Portsmouth v. John F. Clark & Son, Inc. supra.*

As we have said, if the relevant statutes cannot be construed to mean that the plaintiffs' application for a mobile home park permit was really a request for subdivision approval, the board of selectmen should have acted on it. The next question is whether, under the circumstances of this case, the selectmen's failure to act should constitute approval. We hold that it should.

Article III of the town's ordinance, entitled "Mobile Homes and Mobile Home Parks," imposes no specific time limit within which the selectmen must act on a permit application. In such a case, a reasonable time is imposed. 2A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 55.03 (4th ed. 1973). To determine what should be a reasonable time, we look to those portions of the ordinance governing planning board activity and to similar sections of the State statutes. *Wilson v. Personnel Comm'n,* 117 N.H. 783, 378 A.2d 1375 (1977); *see* 2A C. SANDS, *supra* §§ 53.01, 55.01. Section 6:6 of Milford's subdivision regulations provides that "the [Planning] Board shall, within 30 days from the date of submission of the final plat, approve or disapprove the

plat . . . ." RSA 36:23 (Supp. 1977), entitled "Board's Procedure on Plats", provides that "[t]he planning board shall place on its agenda for consideration any plat submitted to it within thirty days and shall act to approve or disapprove thereof within ninety days . . . otherwise such plat shall be deemed to have been approved . . . ." Although a decision on a mobile home park permit entails a simpler procedure than does a decision on a subdivision, neither the Milford selectmen nor the planning board acted within thirty days, or even ninety days. We are convinced that the plaintiffs had to wait an unreasonably long time for their permit. We hold, therefore, that the selectmen must issue the plaintiffs a permit for the operation of a mobile home park in accordance with the plan submitted to the selectmen on November 14, 1977.

In view of our holding, we do not reach the other issues raised in this appeal.

*Exceptions overruled.*

KING, J., did not sit; the others concurred.