Strafford
No. 84-289

### GRANT L. DAVIS

### v.

### TOWN OF BARRINGTON AND BARRINGTON PLANNING BOARD

August 16, 1985

*Gregoire, Calivas, Morrison & Gray,* of Dover (*Chris W. Calivas* and *Anthony S. Hartnett* on the brief, and *Mr. Calivas* orally), for the plaintiff.

*McNeill & Taylor P.A.,* of Dover (*Edwinna C. Vanderzanden* on the brief, and *Malcolm R. McNeill, Jr.,* orally), for the defendants.

SOUTER, J. This is an appeal from a judgment rendered by the superior court under RSA 36:34, V (Supp. 1983), affirming a decision by the Planning Board of the Town of Barrington, which denied the plaintiff's petition for subdivision and site plan approval. We affirm.

The plaintiff owns 8.27 acres of land lying between France Road and the shore of Swain's Lake in Barrington. On August 5, 1982, the plaintiff submitted to the planning board a "Preliminary Application Form For Subdivision Approval," seeking approval to construct a building with eight two-bedroom condominium units on the land. The plaintiff proposed to place the building near the lake and to provide access from France Road by a private dead-end driveway sixteen feet wide and nine hundred feet long.

By letter dated August 24, 1982, the planning board notified the plaintiff that his plan failed to comply with minimum standards for street design, as required by § 4.18 of the Barrington subdivision regulations (Regs.), calling for access either by a through street or by a dead-end street no longer than six hundred feet and ending in a

turn-around at least one hundred-twenty feet in diameter. The plaintiff did not modify the plan, however, and on October 20, 1982, his counsel wrote to the board stating his position that the application was complete as filed and that the board was consequently obligated to approve, disapprove or modify the plan within 90 days of August 5. *See* Reg. 3.05.

On November 4, 1982, the plaintiff's co-developer and agent, Walter Cheney, met with the board to discuss the application. Although he took the position that the proposed condominium was a subdivision, *see* RSA 36:1, VIII (Supp. 1983); Reg. 2.18, and therefore subject to the board's jurisdiction, he nonetheless argued that the access road regulations did not apply to a subdivision containing only one building. The board maintained otherwise and contended that the driveway as proposed would not allow adequate access for fire trucks. That same day the board sought and received from the Barrington Board of Selectmen a 90-day extension of time to consider the application, because of concern about adequacy of water supply and risk of pollution to the lake. *See* Reg. 3.05.

On November 24, while the plaintiff's application was still pending, the board began to consider possible amendments to the zoning ordinance, including one that would increase the minimum lot size for condominium units from 40,000 to 80,000 square feet, except for the first such unit, for which 40,000 square feet would remain sufficient. Such an amendment would restrict the plaintiff's proposed development to five units on the 360,000-odd square feet of land in question.

On January 20, 1983, the board held a public hearing on the plaintiff's proposal, at which it received expert testimony about the water supply and the potential for lake pollution. At this meeting the plaintiff presented a modified plan showing the driveway relocated to circumvent the leach field but extended to a length of 1,200 feet.

On January 21, plaintiff's counsel demanded that the selectmen order the board to render a decision within 15 days. *See* RSA 36:23, I(c) (Supp. 1983). The selectmen refused to do so. Nonetheless the board rendered a decision within that time, on February 3, 1983, unanimously denying the application, for six stated reasons: (1) lack of clear 200-foot radius around two proposed wells; (2) inadequate soil conditions for a leach field; (3) insufficient detail about floor plans and septic system; (4) lack of alternative septic system site; (5) non-conformance with the town's master plan; and (6) excessively long and inadequate access way. A month later, on March 8, 1983, the town meeting adopted the proposed amendments to the zoning

ordinance, although the town's action was later invalidated, for reasons not affecting our disposition of this case.

The plaintiff appealed the board's denial to the superior court under RSA 36:34, V (Supp. 1983), which provides that the "court may reverse or affirm, wholly or partly, or may modify the decision brought up for review when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that [the board's] decision is unreasonable." The appeal came before a Master (*Charles T. Gallagher*, Esq.), who recommended a judgment affirming the board's order. The Superior Court (*Temple*, J.) approved the master's recommendation, whereupon the plaintiff brought this further appeal, raising two principal issues.

The resolution of a legal question is dispositive of the first issue. The plaintiff argues that the master erred in failing to order approval of the plan as a matter of law because of the board's failure to act within the time prescribed by local regulation. Reg. 3.05 requires action by the board "[w]ithin 90 days of receipt of all material required in Section 4.09 for the final plat and issuance of receipt of final plat," unless the selectmen grant a 90-day extension. Reg. 3.06 provides that if there is no such extension, the failure of the board to act within 90 days will be deemed an approval. The plaintiff points out that the board failed to act within 90 days of August 5 and did not receive an extension of time until the 91st day, November 4. Hence, he argues, his application must be deemed to be approved.

The board has two responses. We will not discuss its argument that the August 5 application was for preliminary approval only, so that the 90-day period did not then begin to run, because a clearer answer to the plaintiff's position is to be found in the provisions of RSA 36:23, I(c) (Supp. 1983):

> "The board shall act . . . within 90 days after submission, subject to extension or waiver as provided in subparagraph (f). Upon failure of the board to approve or disapprove the application, the applicant may obtain from the selectmen . . . an order directing the board to act with 15 days. Failure of the . . . board to act upon such order . . . shall constitute grounds for the superior court . . . to issue an order approving the application, if the court determines that the proposal complies with existing subdivision regulations and zoning and other ordinances."

This statute supersedes an earlier provision, much like the board's regulation, which made approval automatic if the board did not act within the prescribed time.

■■ The present statute, however, conflicts with the terms of the board's regulation. RSA 36:23, I(c) has clearly rejected the policy that an unmeritorious application for subdivision approval should nonetheless be approved merely because a planning board takes too long to disapprove it. The statute has instead provided a mechanism to require action on the merits by the board or, in the alternative, action on the merits by the superior court. The statute therefore provides no power to the board to enact a subdivision regulation that requires automatic approval, and the survival of the regulation in the face of the statutory change can only be seen as an attempt to require approval by a mechanism that conflicts with the statute. Under the general law the board has no such power, *see Dearborn v. Town of Milford*, 120 N.H. 82, 84, 411 A.2d 1132, 1133 (1980). Moreover, RSA 36:23, I (Supp. 1983) expressly provides that the board's procedure shall be "subject to . . . requirements," which include the provisions of RSA 36:23, I(c) (Supp. 1983). Hence, the statute must be applied to the exclusion of the inconsistent regulation.

■ Under the statute the plaintiff had no right to automatic approval after 90 days, but at best had only a right to an order from the selectmen requiring action by the planning board within 15 days. Whether or not the selectmen erred in failing to grant the requested order, the board issued a decision within that time and the plaintiff suffered no prejudice. Therefore he was not entitled to procedural relief, and the board's denial of his application was subject only to the superior court's review on the merits, in accordance with the appellate standard quoted above from RSA 36:34, V (Supp. 1983).

■ We thus reach the second principal issue raised in this appeal. The plaintiff claims that the superior court erred when it found that he had not carried his burden to prove that the board's decision was unreasonable. *See id.* While the master did find that the board's second, third, fourth and fifth stated reasons for denying approval were unsupportable, he nonetheless found that the board had not acted unreasonably in giving its first and sixth reasons, and therefore dismissed the appeal. He thus followed our holding in *Durant v. Town of Dunbarton*, 121 N.H. 352, 354, 430 A.2d 140, 142 (1981), that if any of the board's reasons support the denial, then the plaintiff's appeal to the superior court must fail.

■ In reviewing the master's determinations, the proper question is not whether we would have found as the master did, but rather whether the evidence in the record reasonably supports the master's findings. *Durant v. Town of Dunbarton*, 121 N.H at 357,

430 A.2d at 144. We are satisfied that the master did have an evidentiary basis to sustain the first and sixth reasons and therefore to dismiss the appeal before him on the authority of *Durant*.

The board's first stated reason for denial was the failure of the plan to provide a clear area within a radius of two hundred feet of the wells proposed for supplying water to the condominiums. This reason reflected the board's statutory responsibility to guard against "such scattered or premature subdivision of land as would involve danger or injury to health, safety or prosperity by reason of lack of water supply, drainage, transportation . . . or other public services." RSA 36:21 (Supp. 1983). The board addressed its obligation to assure a clean water supply generally in Reg. 4.02, providing that subdivided land must be of such a character that it can be used for building without danger to public health or safety. The board addressed the obligation more specifically in Reg. 4.22, providing that all subdivision plans must make adequate provisions for water supply and other utilities. These regulations are authorized and appropriate under RSA 36:21 (Supp. 1983). *Durant v. Town of Dunbarton, supra* at 355, 430 A.2d at 142.

Evidence before the master indicated that the board, in turn, had an evidentiary basis for denying the plaintiff's application under these regulations. The evidence indicated that the lake as well as portions of a proposed parking area were within 200 feet of the wells as shown on the plan. For those reasons the plan failed to comply with § 310.36(c) of State Standards for Small Public Water Systems, promulgated by the water supply and pollution control commission (WSPCC). The board could reasonably consider these standards, even though the WSPCC had no authority to enforce its regulation against a development of less than 15 units.

As further support for its position, the board had the report of an hydrologist that there was an inadequate radius of open land around the wells and that the proposed leach field was too close to a seasonal brook that fed into the lake. This evidence of risk to the well water from possible contamination through the lake was underscored by evidence from an inspector from the WSPCC, who testified that within 75 feet of the proposed leach field he had found standing water and sedges, indicating a high water table. On this record, the master was warranted in finding that the board's concern over the adequacy of the wells was a reasonable basis upon which to deny the plaintiff's application.

Under *Durant*, this finding alone was a sufficient basis for upholding the board. Nonetheless, we will also consider the second

reason on which the master upheld the board, that is, the inadequacy of the access way from France Road to the proposed development. The board's authority to assure proper access rests generally on RSA 36:21 (Supp. 1983) and Reg. 4.02, which we have already discussed, giving the board responsibility to guard against risks that would result from inadequate provision for transportation and public services.

The plaintiff raises two arguments, however, in an attempt to limit the board's authority to regulate access to the subdivision. First he claims that his proposed access way is not planned as a public street, over which the board undoubtedly would have jurisdiction, but as a private driveway. While we may assume that such a proposal to reserve ownership of the access road would not nullify the board's regulatory responsibility, the board has expressly addressed the point that the plaintiff raises. Reg. 4.03 provides that "[n]o privately owned reserved strip . . . shall be permitted which controls access to any part of the subdivision."

The plaintiff then falls back on the assertion that this regulation, like the regulations setting specifications for streets, does not apply to a condominium subdivision in which the proposed living areas are all under one roof. There is, however, simply no support for this claim. The statutory and regulatory provisions governing subdivision do not distinguish between condominium and other forms of property development. *See* RSA 36:1, VIII (Supp. 1983); Reg. 2.18. And there is no basis in policy that would support the plaintiff's position. Although a condominium subdivision under one roof will not entail multiple lot or dwelling ownership in the traditional sense, it will involve multiple unit ownership. Therefore, if its common features are deficient in matters of health or safety, they must be seen as affecting the public, not merely one family. *See generally* RSA chs. 356-B and 479-A. Hence the board's standards for street construction clearly do and should apply.

It is just as clear that the plaintiff's plan did not meet those standards. The dead-end street was proposed at twice the permissible length and without an adequate turn-around. *See* Reg. 4.18. The pavement would have been 16 feet wide as against the town minimum of 24 feet. Reg. 4.19. The practical effects of these deficiencies were the focus of testimony by the fire chief, that two fire trucks could not pass on a 16-foot roadway and one truck could not turn within the radius of the proposed turn-around. Once again, therefore, the record supports the master's finding that the board acted reasonably in refusing to approve the plan.

While this ends our consideration of the matters properly before us on appeal, we must briefly address a third issue that the plaintiff seeks to raise. In anticipating the possibility of a further application for approval of a subdivision on the site in question, he argues that bad faith and delay by the board in acting on this application should entitle him to the benefit of the regulations in existence at the time of his original application in 1982, and thus exempt him from any later provisions that may be more onerous. The short answer to this argument, of course, is that it has nothing to do with the issues on this appeal. If the plaintiff should file a new application for approval for a condominium subdivision on the property in question, only then could there be any question about the appropriate substantive standard to be applied.

We will only add that we do not see a scintilla of support in fact or in law for the plaintiff's position that he ought to have a vested entitlement to the application of the regulations as they were at the time he sought subdivision approval on August 5, 1982. We have already dealt with the claim of undue delay, and we will content ourselves with saying that on the record that we have just reviewed, it could not be found that the denial of approval resulted from bad faith. The dispositive point, however, is that the plaintiff's theory of vested rights is patently inconsistent with the settled law in this jurisdiction.

A property owner acquires a vested right to complete his project in spite of the subsequent adoption of an ordinance prohibiting the same only when he has relied in good faith on the absence of any regulation that would prohibit his proposed project, and has made substantial construction on the property or has incurred substantial liabilities relating directly thereto. *Piper v. Meredith*, 110 N.H. 291, 299, 266 A.2d 103, 109 (1970).

The record before us does not indicate that the plaintiff could satisfy either of the *Piper* conditions. At the time of his application there obviously were regulations that prohibited him from developing the land as he planned to do. Even if there had been no such regulations, the plaintiff would not be entitled to claim any vested rights, because there is no evidence of any construction, or of any liabilities, within the meaning of *Piper*. Money spent or liabilities incurred for property acquisition may not be considered under *Piper, see also R. A. Vachon & Son, Inc. v. Concord*, 112 N.H. 107, 111, 289 A.2d 646, 649 (1972); the same is true of money and liabilities attributable to the cost of planning, architectural design and engineering related to a site plan application. *See Riverview Park, Inc. v. Hinsdale*, 113 N.H 693, 695, 313 A.2d 733, 734–35 (1973).

There is therefore no support for the plaintiff's claim of entitlement to rely on the 1982 standards. We should only add that since we have reaffirmed the basic *Piper* rule as recently as *Socha v. City of Manchester*, 126 N.H. 289, 490 A.2d 794 (1985), there is no warrant for reexamining that rule so soon again.

*Affirmed.*

All concurred.