Hillsborough-northern judicial district
No. 97-108

EMILE BUSSIERE

v.

A. ROLAND ROBERGE & a.

July 21, 1998

*Bussiere & Kalinski, P.A.*, of Manchester (*Emile R. Bussiere* on the brief and orally), and *Michael L. Alfano* of Portsmouth, on the brief, for the plaintiff.

*Shaheen & Gordon, P.A.*, of Concord (*Arpiar G. Saunders, Jr.* on the brief and orally), for the defendants.

JOHNSON, J. The defendants, A. Roland Roberge, Carolyn Roberge, HT Management Corporation, and Fifty Five Associates, Ltd. (Fifty Five), appeal an order of the Superior Court (*Sullivan,* J.) holding, *inter alia*, that plaintiff Emile Bussiere (the plaintiff) had the right to exclusive possession and control, as against defendant Fifty Five, of an apartment in Manchester. We affirm.

The order appealed from concluded the first phase of a bifurcated trial. It was represented at trial that plaintiff Wayne Theodore would not participate in the first phase of this case. Therefore, in this opinion we treat Bussiere as the sole plaintiff.

The trial court found the following facts. In March 1984, the Kingswood North Real Estate Trust (the trust), of which the plaintiff was a trustee and beneficiary, owned a seventy-six unit apartment building at 55 North River Road in Manchester. In April 1984, the trust sold the building to Steven Bronstein. The purchase and sale agreement provided that the plaintiff and Raymond Allard, a co-trustee and co-beneficiary of the trust, would each retain a penthouse unit in the building, units 10-F and 10-G respectively, and accordingly provided for a substantially reduced purchase price for the building. The purchase and sale agreement also specified that the plaintiff and Allard would retain the apartments under "paid-up" leases until the building was converted to condominiums. At that time, the units would be conveyed to the plaintiff and Allard at no additional charge.

In financing the transaction, Bronstein gave a first mortgage to Indian Head National Bank (the bank). The legal description of the mortgaged property indicated that it was "subject to" the leases to the plaintiff and Allard. In addition, the bank knew that as part of the consideration for Bronstein's purchase, the two penthouse units would ultimately be conveyed to the plaintiff and Allard.

Bronstein defaulted on the bank's loan on or about December 1, 1993. He had not converted the property to condominium ownership. Following several interim assignments, Fifty Five purchased the bank's mortgage note on September 7, 1994, and, as mortgagee-in-possession, twice served the plaintiff with a demand for rent and a notice to quit. This case ensued. Following a bench trial, the trial court determined that the plaintiff's rights in unit 10-F were superior to those of the defendants, and the defendants appealed.

The defendants assert that the trial court erred in: (1) finding that unit 10-F was not conveyed to the bank as part of its security; (2) establishing a perpetual lease by finding that the plaintiff has a leasehold interest until the condominium conversion takes place; and (3) finding that Fifty Five has no standing to evict the plaintiff. We address each contention in turn.

The defendants first argue that the trial court's ruling that unit 10-F was not part of the bank's security interest creates a cloud on the property's title, is inconsistent with other findings made by the court, is unsupported by the evidence, is contrary to the plain meaning of the phrase "subject to," was based on evidence admitted in violation of the parol evidence rule, and exceeded the trial court's authority by effectuating an illegal subdivision of the property. We need examine only the last of these arguments as we believe the trial court's ruling does not necessarily state that unit 10-F was not a part of the bank's security interest, but rather, its ruling can be interpreted to merely state that Fifty Five's interest in the apartment is subordinate to the plaintiff's leasehold interest.

The defendants interpret the court's ruling as meaning that the first mortgage conveyed no interest in the apartment to the bank. The court's finding, however, may simply acknowledge that in light of the plaintiff's superior leasehold and equitable interests in the apartment, legal title conveyed by a mortgage was of no practical value to the bank as security. The trial court acknowledged these two interpretations in its order on the defendants' motion to reconsider: "The defendants' security interest simply does not include [the plaintiff's] unit, whether the court finds that the apartment was never transferred as security for the mortgage or whether the mortgage was subordinated to [the plaintiff's] lease-

hold interest and right to subsequent transfer of the unit." The defendants do not dispute that the bank's mortgage was "subject to" the plaintiff's lease. As explained more fully below, since that lease entitles the plaintiff to possess the apartment as a tenant until the apartment is converted to a condominium, the trial court's finding that Fifty Five's interest in the apartment is subordinate to the plaintiff's leasehold interest is a more accurate reading of the trial court's ruling. According to our interpretation of the trial court's ruling, the defendants' arguments as to this issue are no longer valid and need not be addressed.

The defendants argue, however, that the plaintiff's right to conveyance of the apartment upon conversion of the property to condominiums is a subdivision which required planning board approval. The defendants cite RSA 672:14, I (1996), which provides, in part, that the term subdivision "means the division of the lot, tract, or parcel of land into 2 or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale, rent, lease, condominium conveyance or building development." The subdivision regulations in effect in Manchester at the time of the conveyance, however, defined the term subdivision in pertinent part as "[t]he subdivision of a lot, tract, or parcel of land into two or more lots, plats, sites or other divisions of land for the purpose, whether immediate or future, of sale or building development." SUBDIVISION REGULATIONS, CITY OF MANCHESTER, NEW HAMPSHIRE (November 15, 1965) (superseded June 27, 1985). The plaintiff argues that the conveyance did not fall within the latter definition.

■■ The interpretation of municipal subdivision regulations is a question of law for this court. See *Lemm Development Corp. v. Town of Bartlett*, 133 N.H. 618, 620, 580 A.2d 1082, 1083 (1990). The regulation at issue, adopted under RSA 36:19-:29 (repealed 1983), appears designed to deal solely with the subdivision of land prior to or in conjunction with development. *Cf. Blevens v. Manchester*, 103 N.H. 284, 286, 170 A.2d 121, 122 (1961) (stating that statutes "like RSA 36:19-29 . . . seek to promote the orderly and planned growth of relatively undeveloped areas within a municipality"). We conclude that the definition of subdivision contained therein was not intended to apply to the conveyance and conversion into a condominium of an existing apartment unit.

■ Where "subdivision" is defined by regulation more restrictively or narrowly than it is by statute, the regulation's definition governs.

> Cities and towns have only such powers as the State grants them. . . . We have held that a town, in exercising its powers to regulate, may not expand upon the legislative definition of "subdivision." Certainly a town may, [however,] through adoption of an ordinance, choose to exercise less power than that granted by the State legislature.

*Dearborn v. Town of Milford*, 120 N.H. 82, 84, 411 A.2d 1132, 1133-34 (1980) (citations omitted). We therefore reject the defendants' contention that the trial court impermissibly effected a subdivision of the property as defined by the subdivision regulation.

The defendants next challenge the trial court's rulings as to the term of the plaintiff's lease. The trial court found that the written lease was not an integrated document, that other documents filled in the missing term, and that according to such documents "[t]he lease terminates when the condominium is formed and the condominium deed to apartment 10-F is delivered to [the plaintiff]." We will not disturb the trial court's "findings unless they are unsupported by the evidence or erroneous as a matter of law." *C & M Realty Trust v. Wiedenkeller*, 133 N.H. 470, 476, 578 A.2d 354, 358 (1990).

■ The defendants argue that this ruling in effect established a perpetual lease. Asserting that perpetual leases are not favored in the law, the defendants contend that explicit language is required to create a perpetual term. We disagree. We have enforced parties' intent to create a perpetual leasehold where, despite the absence of formal language in the grant, the agreement of the parties clearly showed such an intent. *See Cole v. Lake Company*, 54 N.H. 242, 290 (1874). The trial court here found that the "length or duration of the lease was for an interim period pending conversion of the apartment house to a condominium form of ownership." We cannot say that this finding is unsupported by the evidence or contrary to law.

Finally, the defendants argue that the trial court erred by ruling that Fifty Five has no authority to evict the plaintiff. The defendants argue that the trial court's ruling "is tantamount to a finding that no one holds an interest in Apartment 10-F other than [the plaintiff]," and that the plaintiff "has no landlord." We disagree.

Review of the trial court's findings and rulings as a whole reveals that the court held that the defendants had no right to evict the plaintiff because he is not in default on the lease. The defendants have not challenged that ruling but, rather, have relied on their alleged ability to evict the plaintiff as either a tenant at will or a year-to-year tenant whose term has expired. Having upheld the trial court's ruling that the plaintiff is not a tenant at will or year-to-year,

we do not disturb its ruling that the defendants are not entitled under the facts of this case to evict the plaintiff.

*Affirmed.*

THAYER and HORTON, JJ., did not sit; the others concurred.